# United States Court of Appeals for the Federal Circuit

CORRECTED:  February 15, 2005

04-7088

JOHN MAPU, JR.

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

Courtenay C. Brinckerhoff, Foley & Lardner, LLP, of Washington, DC, argued for claimant-appellant.  With her on the brief was George E. Quillin.

Christian J. Moran, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee.  With him on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and Mark A. Melnick, Assistant Director.  Of counsel on the brief were Michael J. Timinski, Deputy Assistant General Counsel, and James T. Dehn, Attorney, United States Department of Veterans Affairs, of Washington, DC.

Appealed from:  United States Court of Appeals for Veterans Claims

Judge William P. Greene, Jr.

# United States Court of Appeals for the Federal Circuit

04-7088

JOHN MAPU, JR.,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

_____

DECIDED:  February 15, 2005

_____

Before RADER, Circuit Judge, ARCHER, Senior Circuit Judge, and BRYSON, Circuit Judge.

BRYSON, Circuit Judge.

This case arises from a missed filing deadline.  Appellant John Mapu, Jr., is a United States Army veteran.  He alleges that he sustained an injury during his service.  He sought veterans' benefits for the injury, and when his request was denied, he appealed to the Board of Veterans' Appeals.  The Board upheld the denial of benefits on July 31, 2001.  The Board's opinion included a notice informing Mr. Mapu that if he wanted to appeal the decision, he had to file a notice of appeal with the Court of Appeals for Veterans Claims ("the Veterans Court") in Washington, D.C., within 120 days of that decision.

Acting pro se, Mr. Mapu went to a United States Post Office to mail his notice on November 28, 2001, which was the 120th day after the Board's decision.  At that time,

mail service to Washington, D.C., was disrupted due to the anthrax crisis. A customer service supervisor and a manager at the Post Office told him that the Postal Service was not providing Overnight Express service to Washington, D.C. There is no suggestion that the Postal Service was not providing regular mail service to Washington, D.C. However, because Mr. Mapu wanted overnight delivery, the Postal Service representatives suggested that if he wanted to have his package delivered overnight, he should use a private carrier service. Mr. Mapu sent the notice by FedEx overnight delivery service. The Veterans Court received the notice the next day, which was 121 days after the Board's decision.

In a single-judge order, the Veterans Court dismissed Mr. Mapu's appeal for lack of jurisdiction because the notice of appeal was not received within 120 days of the Board's decision. Because Mr. Mapu had not mailed his notice of appeal within the 120-day period, the court ruled that he was not entitled to the benefit of the "postmark rule" of 38 U.S.C. § 7266, which provides that a notice of appeal sent to the court through the Postal Service and having a legible postmark is deemed to have been filed with the Veterans Court on the date of the postmark. The court rejected Mr. Mapu's argument that the use of FedEx overnight delivery service should be equivalent to the use of the Postal Service for purposes of determining the filing date. The court also rejected Mr. Mapu's argument that the 120-day appeal period should be equitably tolled.

A three-judge panel of the Veterans Court affirmed the decision that Mr. Mapu's appeal was untimely and that he was ineligible for equitable tolling of the filing deadline. Mr. Mapu appealed that decision to this court, and we remanded the appeal to the Veterans Court for further review in light of our decisions in Jaquay v. Principi, 304 F.3d

1276 (Fed. Cir. 2002) (en banc), and <u>Santana-Venegas v. Principi</u>, 314 F.3d 1293 (Fed. Cir. 2002). On remand, the Veterans Court found that <u>Jaquay</u> and <u>Santana-Venegas</u> were inapplicable to Mr. Mapu's case and again concluded that Mr. Mapu's appeal was untimely. Mr. Mapu appeals that decision.

I

As a preliminary matter, Mr. Mapu argues that his notice of appeal was not untimely within the meaning of 38 U.S.C. § 7266. Subsection (a) of section 7266 states that in order to obtain Veterans Court review of a decision by the Board of Veterans' Appeals, "a person . . . shall file a notice of appeal with the Court within 120 days." Subsection (b) allows a person to file that notice of appeal "by delivering or mailing the notice to the Court." Mr. Mapu contends that the phrase "delivering or mailing" encompasses the act of depositing his notice of appeal with FedEx for delivery. Because he deposited his notice with FedEx within 120 days of the Board decision, Mr. Mapu argues that he fulfilled the requirements of section 7266 regardless of when the Veterans Court received the notice.

Mr. Mapu's construction of the term "delivering" is belied by subsections (c) and (d) of section 7266. Section 7266(c) states that a notice of appeal shall be deemed to be received by the Veterans Court "[o]n the date of receipt by the Court, if the notice is delivered." If the notice is mailed, section 7266(c) states that the notice is deemed to have been received by the Veterans Court on the date of its postmark. Section 7266(d) elaborates on the postmark rule, stating the requirements and procedures used to determine whether a postmark is sufficient for a notice of appeal to be considered filed. Under Mr. Mapu's broad interpretation of section 7266(b), a veteran would meet the

04-7088                                    3

filing deadline the instant the notice of appeal was deposited with a common carrier. It would be irrelevant in Mr. Mapu's view when the Veterans Court actually received the notice, which would make subsections (c) and (d) meaningless. As we discuss below, Congress added subsections (c) and (d) in an effort to liberalize the time requirement for filing a notice of appeal. That legislation would have been unnecessary if sections 7266(a) and (b) already treated filing as complete when the notice of appeal was deposited with the Postal Service or a private courier service. Given the structure of section 7266 and its legislative history, we decline to interpret subsections (a) and (b) in a way that would read subsections (c) and (d) out of the statute. Therefore, we hold that for an appeal to be timely, the Veterans Court must receive the notice of appeal within 120 days of the Board's decision, or the notice must be deemed received within 120 days of the Board's decision pursuant to the postmark rule of sections 7266(c) and (d). Because Mr. Mapu did not comply with either requirement, we agree with the Veterans Court that his appeal did not satisfy the timeliness requirement of section 7266.

II

Even if his appeal is otherwise untimely, Mr. Mapu argues that he is entitled to have the filing deadline equitably tolled. In support of that contention, he notes (1) that he actively pursued his right to appeal; (2) that he was unaware that he might lose his right of appeal by delivering the notice by FedEx rather than through the Postal Service; and (3) that filing his notice using FedEx was equivalent to filing a defective pleading, which can give rise to equitable tolling under Irwin v. Department of Veterans Affairs,

498 U.S. 89 (1990). For the reasons given below, we conclude that equitable tolling is unavailable on the facts of this case.

## A

As an initial matter, the government contends that we lack jurisdiction to review the Veterans Court's determination that equitable tolling is inappropriate in this case. The government contends that the Veterans Court's decision is either a factual determination or an application of law to the facts of a particular case and that our review is therefore barred by 38 U.S.C. § 7292(d)(2). That argument is without merit. In Jaquay, we were presented with the same argument that we lacked jurisdiction because the case concerned the application of the law of equitable tolling to the facts. 304 F.3d at 1289. We rejected that argument, noting that "our holding resolves a contested interpretation of the Veterans Court's jurisdictional statute, 38 U.S.C. § 7266." Id. We have consistently held that "when the material facts are not in dispute and the adoption of a particular legal standard would dictate the outcome of the equitable tolling claim, this court has treated the question of the availability of equitable tolling as a matter of law that we are authorized by statute to address." Bailey v. Principi, 351 F.3d 1381, 1384 (Fed. Cir. 2003), citing Jaquay, 304 F.3d at 1289. Mr. Mapu's case is similar to Jaquay in that regard, and we therefore have jurisdiction over his appeal. Accordingly, we turn to the merits of Mr. Mapu's equitable tolling claim.

## B

The Supreme Court stated in Irwin that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." 498 U.S. at 95-96. The Court then listed two settings in

which equitable tolling had been recognized in private law suits, namely "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Id. at 96. The Court's opinion does not, however, suggest that those two settings were the only ones in which equitable tolling would be appropriate. See Nunnally v. MacCausland, 996 F.2d 1, 5 n.7 (1st Cir. 1993) ("A fair reading of Irwin, however, shows that the Court did not undertake an exhaustive list of factors that may be considered in the equitable weighing process."). We have recognized that equitable tolling of the deadline in 38 U.S.C. § 7266 is allowed "in a variety of circumstances," Barrett v. Principi, 363 F.3d 1316, 1318 (Fed. Cir. 2004), and we have not limited equitable tolling of the 120-day appeal deadline to cases falling within the two examples cited in Irwin. See Barrett, 363 F.3d at 1318 (equitable tolling is available during a period when the veteran was mentally incapacitated); Brandenburg v. Principi, 371 F.3d 1362, 1364 (Fed. Cir. 2004) (equitable tolling is available when the veteran files the notice of appeal with the Board rather than with the Veterans Court); Bailey v. Principi, 351 F.3d at 1385 (equitable tolling is available when the veteran files the notice of appeal at the wrong location, using an incorrect form); Santana-Venegas, 314 F.3d at 1298 (equitable tolling is available when the veteran files the notice of appeal with the regional office rather than with the Veterans Court); see also Jaquay, 304 F.3d at 1289 (equitable tolling is available when the veteran misfiles a motion for Board reconsideration with the regional office rather than with the Board).

In ruling on Mr. Mapu's claim of equitable tolling on remand, the Veterans Court looked to whether the facts of Mr. Mapu's appeal fell within the two examples set forth in Irwin or within the facts of Santana-Venegas and Jaquay. The court concluded that Santana-Venegas and Jaquay did not apply because Mr. Mapu did not file his notice with a regional office; the court held that Irwin was inapplicable because Mr. Mapu did not file a defective pleading and he did not allege any agency employee had engaged in misconduct that caused him to miss the filing deadline.

In applying the equitable tolling doctrine, we have rejected the approach of looking to whether a particular case falls within the facts specifically identified in Irwin or one of our prior cases. In Barrett, for example, we considered whether a veteran's mental illness can excuse the untimely filing of his appeal. 363 F.3d at 1318. The government argued that equitable tolling under section 7266 was limited to the specific factual circumstances listed in Irwin. We rejected that argument, noting that "[a] careful study of Supreme Court precedent" directs otherwise. Id. We again reject the suggestion that equitable tolling is limited to a small and closed set of factual patterns and that equitable tolling is precluded if a veteran's case does not fall within those patterns. Such a conclusion would run counter to our holding that "requiring ruthless application of the time limit [of section 7266] is somewhat arbitrary." Bailey v. West, 160 F.3d 1360, 1364 (Fed. Cir. 1998) (en banc).

Irwin provides guidance as to the proper analysis in determining whether equitable tolling is appropriate. The first question is whether equitable tolling is available in private litigation with similar circumstances, recognizing that equitable tolling does "not extend to what is at best a garden variety claim of excusable neglect." Irwin,

498 U.S. at 95-96.  The second question is whether Congress has either provided or intended that equitable tolling be unavailable in the situation at issue.  Id.

C

The 120-day deadline of section 7266 was established in 1988 as part of the Veterans Judicial Review Act, Pub. L. No. 100-687, Div. A, § 301(a), 102 Stat. 4105, 4113 (1988).  That statute gave the Veterans Court authority to establish rules governing the filing of appeals.  In 1991, the Veterans Court published its Rules of Practice and Procedure, Rule 4 of which required that the Veterans Court actually receive a notice of appeal within 120 days for it to be timely.  In Re: Rules of Practice and Procedure, 1 Vet. App. XXIX, XXXII (May 1, 1991).  The Veterans Court subsequently dismissed the appeals of several veterans in which the notice of appeal had been postmarked by the 120-day deadline, but was not received by the Veterans Court within that time period.  See, e.g., Holliday v. Derwinski, 2 Vet. App. 199, 199 (1992); DiDonato v. Derwinski, 2 Vet. App. 42, 43 (1991).  At least one such dismissal was upheld by this court.  See Espelita v. Derwinski, 958 F.2d 1052, 1053 (Fed. Cir. 1992).

In response to those decisions, Congress amended section 7266 by adding the postmark rule to permit a notice of appeal that was mailed via the Postal Service to be deemed filed on the date of the postmark.  See Veterans' Benefits Improvements Act of 1994, Pub. L. No. 103-446, § 511(a), 108 Stat. 4645, 4670.  Statements made by members of Congress at that time clearly indicate that they believed the Veterans Court had previously been correct in requiring that the court actually receive a notice of appeal within 120 days, regardless of when or how the notice was sent.  Senator Rockefeller,

one of the sponsors of the 1994 legislation, explained that "the [Veterans Court] acted appropriately and within the scope of its authority when it adopted Rule 4." 139 Cong. Rec. 24,712 (1993). He explained, however, that the 1994 legislation adopting the postmark rule was designed to mitigate the harshness of Rule 4 as applied to veterans whose mail was delayed or who lived far from Washington, D.C. Id.

It is clear that Congress wanted the postmark rule to apply only to a notice of appeal that was mailed using the Postal Service. The Joint Explanatory Statement for one of the related bills that proposed to amend section 7266 explained that the postmark rule would not be broadly applicable, but that only "legible United States Postal Service postmarks would be sufficient." 140 Cong. Rec. 28,849 (1994); see also id. at 28,840 (containing Senator Rockefeller's summary of the major provisions of H.R. 4386). The Joint Explanatory Statement further stated that "if a [notice of appeal] is delivered to the Court (for example, by private courier or delivery service), it would be considered timely filed if it is received by the Court within the 120-day limit established by Congress." 140 Cong. Rec. 28,849 (1994). The intention to limit the waiver of sovereign immunity to the strict confines of the postmark rule is further manifested in the provisions of sections 7266(c) and (d), which clearly state that a Postal Service postmark is necessary for the postmark rule to apply. In short, it is clear that Congress was aware that the Veterans Court required actual receipt of the notice of appeal and specifically limited the exception created by the postmark rule to notices of appeal sent through the Postal Service. Thus, notices of appeal delivered by other means were specifically excluded from the application of the new statute.

Mr. Mapu asks that we use equitable tolling to broaden the waiver of sovereign immunity in exactly the way that Congress refused to—by in effect extending the postmark rule to a package sent using FedEx. We conclude, however, that Congress's explicit decision not to broaden the postmark rule by extending it to delivery services other than the Postal Service must trump any extension of equitable tolling to this case. In sum, equitable tolling is unavailable in a case such as this one, in which the veteran's only excuse for a late filing of the notice of appeal is that a delivery service other than the Postal Service was used.

III

Finally, we reject Mr. Mapu's contention that the Board's Appeals Notice informing him of his appeal rights was defective. Mr. Mapu claims that the notice failed to provide him with "an explanation of the procedure of obtaining review," as required by 38 U.S.C. § 5104(a), because it did not explain the postmark rule and did not advise him that he might lose his appeal rights if he sent the notice of appeal by a private courier service instead of the Postal Service. However, we have previously held that section 5104(a) "requires nothing more than the Appeals Notice provides, viz., a general outline of the available procedures for obtaining review of a final Board decision." Cummings v. West, 136 F.3d 1468, 1472 (Fed. Cir. 1998), overruled on other grounds by Bailey v. West, 160 F.3d 1360, 1368 (Fed. Cir. 1998). In this case, the Board's Appeals Notice apprised Mr. Mapu of his right to appeal, the 120-day deadline for the appeal, and the address of the Veterans Court. Furthermore, the Appeals Notice advised him that he could direct any questions to the Veterans Court about the "procedure by which you may file your Notice of Appeal." Because the notice provided

the "general outline of the available procedures for obtaining review," as required by section 5104, it was not insufficient.

Each party shall bear its own costs for this appeal.

<u>AFFIRMED</u>.