# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 05-45

WILLIAM E. MCCREARY, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided     September 2, 2005     )

*William E. McCreary*, pro se.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Thomas A. McLaughlin*, Special Assistant to the Assistant General Counsel; and *Gabrielle L. Clemons* (non-attorney practitioner), all of Washington, D.C., were on the pleading for the appellee.

Before GREENE, *Chief Judge*, and LANCE and SCHOELEN, *Judges*.

SCHOELEN, *Judge*:   The pro se appellant, William E. McCreary, seeks review of an August 30, 2004, Board of Veterans' Appeals (Board) decision denying his claims for entitlement to service connection for chronic respiratory disease, including a claim based on undiagnosed illness. *William E. McCreary*, BVA 99-24007 (Aug. 30, 2004).  The Court is addressing the issue of its jurisdiction over this appeal because the appellant's Notice of Appeal (NOA) was filed more than 120 days after the date stamped on the Board decision.  *See Rosler v. Derwinski*, 1 Vet.App. 241, 242 (1991) (holding that it is presumed that the Board decision was mailed on the date it was issued); *see also Cintron v. West*, 13 Vet.App. 251, 254 (1999); *Henderson v. West*, 12 Vet.App. 11, 14 (1998) (Court has jurisdiction to determine its own jurisdiction over a case); *Smith (Irma) v. Brown*, 10 Vet.App. 330, 332 (1997) ("'It is well-established judicial doctrine that any statutory tribunal must ensure that it has jurisdiction over each case *before* adjudicating the merits, that a potential jurisdictional defect may be raised by the court or tribunal, *sua sponte* or by any party at any stage

in the proceedings, and, once apparent, must be adjudicated.'" (quoting *Barnett v. Brown*, 83 F.3d 1380, 1383 (Fed. Cir. 1996))). Because the appellant has not met his burden of establishing that he filed a timely NOA and because equitable tolling is not appropriate in this case, the Court will dismiss this appeal for lack of jurisdiction.

## I. BACKGROUND

The Court filed the appellant's NOA on January 4, 2005, because it was received in an envelope stamped with a United States Postal Service postmark of that date. *See* 38 U.S.C. § 7266(c); U.S. VET. APP. R. 4(a). On his NOA, the appellant indicates that he is appealing a Board decision dated August 30, 2004. In response to a January 18, 2005, Court order, the Secretary provided the Court a signed copy of the Board decision, verifying that August 30, 2004, is the date stamped on the Board decision. Thus, his NOA was filed 127 days after the date stamped on the Board decision, which is presumed to be the date of mailing. *See Rosler*, 1 Vet.App. at 242; 38 C.F.R. § 20.1100 (2004) (stating that Board decisions "will be stamped with the date of mailing on the face of the decision"). Attached to the back of the Board decision was a form advising the appellant of his appellate rights, informing him that he had 120 days from the date of the Board decision to file an NOA in this Court. The appellant has not asserted that either he or his representative failed to receive a copy of the Board decision. *See McCreary*, BVA 99-24007, at 1 (stating that the appellant was represented before the Board by the American Legion).

The appellant has acknowledged, in a signed, certified statement, that his NOA is untimely. In his January 4, 2005, statement accompanying the NOA, he stated:

> The purpose of this statement is to request that I be granted a delay in my filing of my Notice of Appeal[.] It was to be filed by the 23rd of December[,] 2004, but it would be a grievous injustice to not perfect my appeal because of a few days. We were struck very hard by Hurricane Ivan, and received a very substantial amount of damage to our home. In the attempt to settle with the insurance company and [sic] repairs to my house[,] the paperwork was misplaced. We were living in 3 room[s], and had a myriad of boxes with various paperwork stored in them[.] On December 31, I found the paperwork again, and immediately contacted my local veterans service officer for assistance in perfecting my appeal. Please allow the lapse of time to be excused[.] I did not plan on a hurricane.

2

On January 18, 2005, the Court ordered the appellant to explain why his appeal should not be dismissed because his NOA was filed more than 120 days after the date stamped on the Board decision. On February 18, 2005, the Court received a response, in the form of a signed, certified statement from the appellant, dated February 16, 2005. The text of this second statement is identical to his previous statement accompanying the NOA, except that the following sentence was added at the end of the statement: "Couldn't an Act of God[] be a valid reason for the extension on . . . my appeal?"

We take judicial notice of the following information regarding Hurricane Ivan. *See Smith (Brady) v. Derwinski*, 1 Vet.App. 235, 238 (1991) ("Courts may take judicial notice of facts not subject to reasonable dispute." (citing FED. R. EVID. 201(b))). On the morning of September 16, 2004, Hurricane Ivan made landfall just west of Gulf Shores, Alabama, with winds of approximately 120 miles per hour. Stacy R. Stewart, *Tropical Cyclone Report, Hurricane Ivan*, National Hurricane Center, *at* http://www.nhc.noaa.gov/2004ivan.shtml (revised June 3, 2005). Twelve hours later, the hurricane weakened to a tropical storm over central Alabama. *Id.* The storm brought flooding and tornadoes to much of the southeastern United States, and total rainfall of three to seven inches throughout Alabama. *Id.* The strong winds from the storm spread inland, as well, damaging homes, and downing trees and power lines. *Id.*

## II. ANALYSIS

### A. Equitable Tolling of the 120-Day Judicial-Appeal Period

In order to obtain review in this Court of a final Board decision, an NOA must be filed "within 120 days after the date on which notice of the [Board] decision is mailed . . . ." 38 U.S.C. § 7266(a). In this case, the appellant concedes that his appeal is untimely; however, he asks that the Court extend his time to appeal. We consider this statement to be a request that the 120-day judicial-appeal period be equitably tolled, based on the effect of Hurricane Ivan on the appellant's ability to file a timely NOA.

The 120-day judicial-appeal period may be equitably tolled under certain, limited circumstances. In *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990), the U.S. Supreme Court held that equitable tolling applied to suits against the United States. It identified two

situations where equitable tolling has been recognized – first, where the claimant has "actively pursued his judicial remedies by filing a defective pleading during the statutory period," or second, "where the claimant has been induced or tricked" by the opposing party's misconduct. *Id.* In addition, the Court emphasized in *Irwin* that courts are "much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights," and held that the failure to file an employment discrimination complaint within the 30-day filing period because the complainant's attorney was out of the country constituted a "garden-variety claim of excusable neglect" that did not justify equitable tolling. *Id.*

In *Bailey (Harold) v. West*, 160 F.3d 1360, 1362-64 (Fed. Cir. 1998) (en banc), the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held that equitable tolling applies to the 120-day judicial-appeal period in 38 U.S.C. § 7266(a). In *Bailey*, the appellant's reliance on a VA employee's statement that the appellant's judicial appeal would be processed was a sufficient basis for equitable tolling of the judicial-appeal period when it was discovered that the VA employee failed to file the appeal with the Court. *Id.* at 1361. The Federal Circuit has also recognized that the 120-day judicial-appeal period may be equitably tolled based on the appellant's filing of his NOA at a location other than the Court. *See Brandenburg v. Principi*, 371 F.3d 1362, 1364 (Fed. Cir. 2004) (appellant misfiled the NOA with the Board rather than the Court); *Bailey (Edward) v. Principi*, 351 F.3d 1381, 1385 (Fed. Cir. 2003) (appellant filed the NOA at the wrong location using the wrong form); *Santana-Venegas v. Principi*, 314 F.3d 1293, 1296-98 (Fed. Cir. 2002) (appellant misfiled NOA with regional office rather than Court); *Jaquay v. Principi*, 304 F.3d 1276, 1289 (Fed. Cir. 2002) (en banc) (appellant misfiled motion for Board reconsideration with regional office rather than Board). Moreover, the Federal Circuit has held that ill health may be a basis for tolling the judicial-appeal period. *See Arbas v. Nicholson*, 403 F.3d 1379, 1381-82 (Fed. Cir. 2005) (remanding to determine whether appellant's ill physical health prevented timely filing of NOA); *Barrett v. Principi*, 363 F.3d 1316, 1318-21 (Fed. Cir. 2004) (remanding to determine whether appellant's untimely filing of NOA was "direct result" of mental incapacitation). However, the Federal Circuit noted in *Mapu v. Nicholson*, 397 F.3d 1375, 1380 (Fed. Cir. 2005), that, in applying the doctrine of equitable tolling, "we have rejected the approach of looking to whether a particular

4

case falls within the facts specifically identified in *Irwin*[, *supra*,] or one of our prior cases." *See also Arbas*, 403 F.3d at 1381.

The appellant's request that an "Act of God" extend the time to file his NOA appears to be an argument for this Court to allow equitable tolling of the judicial-appeal period in 38 U.S.C. § 7266(a) based on extraordinary circumstances and presents an issue of first impression for this Court. *Cf. Evans v. Principi*, 17 Vet.App. 41, 51-54 (2003) (Steinberg, J., separate views) (discussing equitable tolling based on extraordinary circumstances). The Court will consider whether equitable tolling should be applied in cases involving extraordinary circumstances, in light of the Federal Circuit's assertion in *Mapu* that the application of the doctrine of equitable tolling is not limited to factual patterns where it has already been applied.

B. Equitable Tolling Based on Extraordinary Circumstances in Other Courts

Although the Federal Circuit has never considered whether a statute of limitations may be equitably tolled based on extraordinary circumstances, a majority of other Federal appellate courts that have considered the issue have recognized equitable tolling based on extraordinary circumstances. One application of equitable tolling has taken place when an extraordinary circumstance makes timely filing impossible. For example, in *Hanger v. Abbott*, 73 U.S. (6 Wall.) 532, 542 (1867), the Supreme Court recognized that extraordinary circumstances could be a basis for equitable tolling and held that the closing of courts in the South during the Civil War was an extraordinary circumstance warranting equitable tolling of the statute of limitations. More recently, the U.S. Court of Appeals for the Ninth Circuit (Ninth Circuit) followed *Hanger* in applying the doctrine of equitable tolling. *See Seattle Audubon Soc. v. Robertson*, 931 F.2d 590 (9th Cir. 1991), *rev'd on other grounds*, 503 U.S. 429 (1992). In *Seattle Audubon Society*, the Ninth Circuit held that an unconstitutional statute and a district court's erroneous interpretation of the statute prevented the plaintiffs from raising certain claims, which had, by that point, become time barred, and the court therefore equitably tolled the statute of limitations. *Id.* at 597-98. The court distinguished that case from *Irwin*, *supra*, by noting that "when external forces, rather than plaintiff's lack of diligence, account for the failure to file a timely claim, equitable tolling is proper." *Id.* at 596.

In *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996), the Ninth Circuit applied the doctrine of equitable tolling to a suit against the Government brought under the Federal

Tort Claims Act, 28 U.S.C. § 2401(b). The Government attempted to invoke the statute of limitations against a plaintiff who, because he had been abducted, incarcerated, and tried in a foreign country, filed a lawsuit more than one year after the expiration of the statute of limitations. *Id.* at 700. The court identified two situations where federal courts have applied the doctrine of equitable tolling: (1) Where claimants were prevented from asserting their claims by some kind of wrongful conduct, or (2) where extraordinary circumstances beyond the claimant's control made it impossible to file the claims on time. *Id.* at 701. The court concluded that this was a "rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice." *Id.*

A more common application of the doctrine of equitable tolling has taken place in cases involving the filing of writs of habeas corpus. The Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), placed a one-year time limitation on filing a petition for a writ of habeas corpus in Federal courts after, among other things, final judgment. At least eight Federal courts of appeal have recognized extraordinary circumstances as a basis for equitably tolling that one-year statute of limitations. *See e.g., United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000); *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *Sandvik v. United States*, 177 F.3d 1269, 1271-72 (11th Cir. 1999) (per curiam); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998); *Miller v. N.J. State Dep't of Corr.*, 145 F.3d 616, 618 (3d Cir. 1998); *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998); *Calderon v. United States Dist. Ct.*, 128 F.3d 1283, 1288-89 (9th Cir. 1997) [hereinafter *Calderon I*], *overruled on other grounds by* 163 F.3d 530 (9th Cir. 1998) (en banc) [hereinafter *Calderon II*], *overruled on other grounds by Woodford v. Garceau*, 538 U.S. 202, 206 (2003); *see also Delaney v. Matesanz*, 264 F.3d 7, 16 (1st Cir. 2001) (per curiam) (noting, without explicitly holding that extraordinary circumstances may be a basis for equitable tolling, that "no extraordinary circumstances prevented the petitioner from protecting his own interests, so the district court did not abuse its discretion in declining to apply equitable tolling to resuscitate his time-barred habeas case"). These cases generally recognize that "extraordinary circumstances that are both beyond [a claimant's] control and unavoidable even with diligence" will equitably toll a statute of limitations. *Sandvik*, 177 F.3d at 1271.

The U.S. Court of Appeals for the Sixth Circuit (Sixth Circuit), however, expressly declined to adopt extraordinary circumstances as a basis for equitably tolling the one-year limitations under the AEDPA. *See Dunlap v. United States*, 250 F.3d 1001, 1007-09 (6th Cir. 2001). In describing the cases in which other courts have, based on extraordinary circumstances, equitably tolled the one-year statute of limitations under the AEDPA, the Sixth Circuit recognized its application both in habeas corpus cases and in civil cases:

> The courts that have applied the "rare and exceptional circumstances" or "extraordinary circumstances" test actually apply the test to all cases involving equitable tolling–not simply habeas cases. In fact, the *Calderon* [*I*] Court, in applying the test to the habeas case before it cited *Alvarez-Machain*[, *supra*], a civil case wherein the Plaintiff asserted claims under the Federal Tort Claims Act against the government and certain government officials for the proposition that equitable tolling should only be applied in extraordinary circumstances. Similarly, other cases applying the "extraordinary circumstances" and "rare and exceptional circumstances" test have apparently followed the dictates of *Irwin*[, *supra*], a civil case involving employment discrimination and have made no mention of a special need to adopt this standard simply because the statute of limitations pertains to a habeas case. Other cases have simply followed *Calderon* [*I*], the cases cited therein, or employment discrimination cases. None of these courts, however, adopted a standard different from the standard they would apply in any other case addressing the issue of equitable tolling. We therefore see no reason to depart from the test that we have uniformly applied to the issue of equitable tolling in this Circuit.

*Dunlap*, 250 F.3d at 1009 (citations omitted). While declining to specifically extend equitable tolling to extraordinary circumstances, the court instead chose to use the test it applied in all cases of equitable tolling. *Id.* This test, as articulated in *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988), and referred to in *Dunlap*, considers five factors to determine whether a statute of limitations should be equitably tolled in a particular case: (1) Lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) reasonableness in remaining ignorant of the legal requirements for filing a claim. *Andrews*, 851 F.2d at 151; *see Dunlap*, 250 F.3d at 1008.

C. Equitable Tolling of 38 U.S.C. § 7266(a) Based on Extraordinary Circumstances

Based upon this Court's jurisprudence and the guidance of the vast majority of other appellate courts that have considered the issue, we hold that extraordinary circumstances can trigger consideration of the principles of equitable tolling. In defining the criteria that will determine when

7

equitable tolling will be applied based on extraordinary circumstances, we will incorporate the standards used by other courts with the standards for equitable tolling currently applied in this Court.

Almost all courts that have considered the issue have recognized extraordinary circumstances as a basis for equitable tolling. One exception, as noted above, is the Sixth Circuit, which uses a specific five-factor test. *See Dunlap* and *Andrews*, both *supra*. We find that test too restrictive and will not adopt it. Rather, we believe it is necessary to consider *all* relevant factors in determining whether equitable tolling is appropriate. Also, in many cases before this Court, some of the factors in the *Andrews* test will be irrelevant. For example, the prejudice to the Secretary caused by the untimely filing, in almost all cases would be negligible. Moreover, the Sixth Circuit's rationale for using its five-factor test rather than specifically adopting extraordinary circumstances as a basis for equitable tolling is that it would involve modifying the standards used in prior cases. *See Dunlap*, 250 F.3d at 1009. This Court is not so bound – that is, we have no generally applicable test that is applied in all claims for equitable tolling. *See Mapu*, 397 F.3d at 1380 ("[W]e have rejected the approach of looking to whether a particular case falls within the facts specifically identified in *Irwin* or one of our prior cases.").

A common factor in all decisions adopting extraordinary circumstances as a basis for equitable tolling is the requirement that the extraordinary circumstance be beyond the claimant's control. *See Irwin*, 498 U.S. at 96; *Calderon II*, 163 F.3d at 541. This requirement strikes a balance, between, on one side, preserving judicial review for appellants who suffer unavoidable misfortune, and, on the other side, ensuring that circumstances based upon the appellant's own doing will not excuse an untimely filing. Such a requirement is consistent with the types of cases where equitable tolling of the 120-day judicial-appeal period under 38 U.S.C. § 7266(a) has already been recognized, for example, where the appellant is either mentally or physically ill. *See Arbas* and *Barrett*, both *supra*.

A requirement in cases of equitable tolling based on mental incapacity is that the appellant must establish that the "failure to file was the *direct result* of a mental illness." *Barrett*, 363 F.3d at 1321 (emphasis added). Merely establishing mental incapacity, no matter how severe, is not sufficient for equitably tolling the judicial-appeal period. *See id*; *see also Claiborne v. Nicholson*, 19 Vet.App. 181, 185-86 (2005). The appellant must establish a causal link between the mental

illness and the untimely filing. This requirement is equally applicable in the context of equitable tolling based on extraordinary circumstances.

Another consideration when determining whether equitable tolling is appropriate is the appellant's exercise of "due diligence" in preserving his appellate rights, as recognized by the Supreme Court in *Irwin*, 498 U.S. at 96. *See Davis v. Principi*, 17 Vet.App. 29, 38-39 (2003) (holding that equitable tolling did not apply because the appellant did not exercise "due diligence"). The U.S. Court of Appeals for the Second Circuit has noted that waiting until the end of a limitations period to file a claim does not automatically disqualify a claimant from equitable tolling. *See Valverde v. Stinson*, 224 F.3d 129, 135-36 (2d Cir. 2000) ("A petitioner should not be faulted, however, for failing to file early or take other extraordinary precautions early in the limitations period against what are, by definition, rare and exceptional circumstances that occur later in that period."). The same court also observed, however, that "the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll." *Smith v. McGinnis*, 208 F.3d at 17. Interpreted together, these two statements guide this Court to evaluate the reasonableness of an appellant's diligence in preserving his judicial-appeal rights on a case-by-case basis. Thus, we will not adopt an explicit requirement that an appellant attempt to file an NOA early in the judicial-appeal period in order to obtain the benefit of the doctrine of equitable tolling.

We will also not require that extraordinary circumstances make the timely filing of an NOA impossible. The Court's Rules of Practice and Procedure contemplate one situation where timely filing of an NOA would be impossible – that is, because the Court is closed. *See* U.S. VET. APP. R. 26(a) (in computing due date of a filing in this Court, the last day is not counted if "it is a day when the Clerk's Office has been closed by direction of the Chief Judge or when the weather or another condition makes the Clerk's Office inaccessible, as declared by the Court or the Chief Judge").

Therefore, the Court will adopt a three-part test to determine whether equitable tolling based on extraordinary circumstances is appropriate. First, the extraordinary circumstance must be beyond the appellant's control. Second, the appellant must demonstrate that the untimely filing was a direct result of the extraordinary circumstances. *See Barrett*, 363 F.3d at 1321; *Valverde*, 224 F.3d at 134 ("If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file

9

after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing."). Third, the appellant must exercise "due diligence" in preserving his appellate rights, meaning that a reasonably diligent appellant, under the same circumstances, would not have filed his appeal within the 120-day judicial-appeal period. *See Irwin*, 498 U.S. at 96; *Sandvik*, 177 F.3d at 1271-72. This standard, though not requiring impossibility, ensures that the exception (equitable tolling) does not swallow the 120-day judicial-appeal period rule set forth in 38 U.S.C. § 7266(a).

We reemphasize that the burden of establishing jurisdiction rests with the appellant. *See McNutt v. G.M.A.C.*, 298 U.S. 178, 181 (1936); *Bethea v. Derwinski*, 2 Vet.App. 252, 255 (1992). It is the appellant's obligation not only to state the specific extraordinary circumstances that prevented the filing of a timely NOA, but also to produce any evidence supporting his claim for equitable tolling. *See Jones v. Principi*, 18 Vet.App. 500, 502 (2004) (per curiam order) (holding that the duty-to-assist provisions of 38 U.S.C. § 5103A do not apply to establishing mental incapacity for the purposes of equitably tolling the judicial-appeal period). It will then be for the Court to evaluate the evidence presented and determine whether equitable tolling is appropriate on a case-by-case basis. *See id.* at 503 (noting Court's authority to find facts "'crucial to the proper determination of whether this Court has jurisdiction.'" (quoting *Stokes v. Derwinski*, 1 Vet.App. 201, 203-04 (1991))).

D. Application of Standard to Present Case

We now turn to the issue of whether the appellant has met his burden of establishing jurisdiction under the standard for equitable tolling based on extraordinary circumstances established above. Regarding the first part of the test, it is obvious that a hurricane is a type of extraordinary circumstance that is beyond the appellant's control. Therefore, the only elements remaining for the Court to assess are whether the untimely filing was a direct result of Hurricane Ivan and whether the appellant exercised due diligence in pursuing his appeal. Although the Court is sympathetic to the appellant's hardship, for the reasons stated below, we must conclude that he has failed to demonstrate that his untimely appeal was a direct result of Hurricane Ivan, nor has he demonstrated that he exercised due diligence in pursuing his appeal.

10

At best, the appellant, with his statement, has established that his untimely appeal was an indirect result of the hurricane – that is, in an effort to settle hurricane-related damage claims with an insurance company, he misplaced his paperwork related to this appeal. Nothing in the appellant's statement satisfies his burden of establishing that his untimely filing was a direct result of extraordinary circumstances. *See Claiborne*, 19 Vet.App. at 186 (holding that equitable tolling is not appropriate because appellant failed to establish that his failure to file a timely NOA was a "direct result" of his mental illness). Although the appellant states that he had to live in three rooms for some amount of time after the hurricane, he also notes that the paperwork was "misplaced." The common definitions of "misplace" are "to put in a wrong or inappropriate place" or "to mislay." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 742 (10th ed. 2001). We cannot assume that "misplaced" means any more than its common definition – that is, that the appellant simply put his paperwork in the wrong place. A person exercising "due diligence" would not have filed his NOA late simply because he "misplaced" his paperwork. The appellant, in his statement, implies that the hurricane damage to his home may have resulted in items being stored in boxes. However, he offers no explanation for how his paperwork was misplaced or where it was misplaced. Without any evidence *directly* attributing his untimely appeal to the hurricane, we will not equitably toll the 120 day judicial-appeal period simply because the appellant misplaced his paperwork.

Furthermore, the low burden for filing an NOA in this Court further justifies not equitably tolling the 120-day judicial-appeal period in this case. Rule 3(c) of the Court's Rules of Practice and Procedure requires that an NOA contain the appellant's name, address, telephone number, VA claims file number, a reasonable identification of the Board decision appealed, and an expressed intent to seek Court review of that decision. U.S. VET. APP. R. 3(c). Moreover, the Federal Circuit has held that the failure of the appellant to provide an address in his NOA does not preclude the Court's jurisdiction over a case. *See Durr v. Nicholson*, 400 F.3d 1375, 1381-83 (Fed. Cir. 2005); *see also* U.S. VET. APP. R. 1(b) (Court's rules do not extend or limit Court's jurisdiction). In addition, the Court is required to construe an NOA liberally. *See Durr*, 400 F.3d at 1380; *see also Smith v. Barry*, 502 U.S. 244, 248 (1992) (holding same with respect to Rule 3 of the Federal Rules of Appellate Procedure). For example, the Court must accept the NOA even if the appellant could not identify the specific date of the Board decision. *See Calma v. Brown*, 9 Vet.App. 11, 15-16 (1996); *see also*

U.S. Vet. App. R. 3(c)(2) (NOA must "reasonably identify the Board decision appealed from"). These cases indicate that the burden on the appellant for filing of an NOA is very low. Therefore, it cannot be said that the appellant needed his paperwork to file an NOA in this Court and he has not demonstrated how the misplacement of it prevented him from doing so. A statement of the approximate date and issues of the Board decision, along with a statement indicating intent to seek review of the decision would have been sufficient to satisfy the low burden on a claimant's seeking to file an NOA. *See Smith v. Barry*, *Durr*, and *Calma*, all *supra*; U.S. Vet. App. R. 3.

Most importantly, the appellant has also failed to demonstrate how Hurricane Ivan, which struck in September, affected his ability to file a timely appeal, which was due over three months later. Although the appellant asserts that his paperwork was packed in boxes and he was forced to live in three rooms while his home was being repaired, he does not relate how this circumstance prevented him from filing a timely appeal. In addition, the Court would be more inclined to apply equitable tolling had the hurricane struck later in the judicial-appeal period. As noted above, the appellant would not be ineligible for equitable tolling because he waited until the end of the judicial-appeal period to file his NOA. *See Valverde*, 224 F.3d at 135-136. However, this is the opposite case. The extraordinary circumstance that the appellant relies upon for justifying equitable tolling of the judicial-appeal period occurred early in the period. The appellant had over three months after Hurricane Ivan struck in September 2004 to file his NOA with the Court, and he failed to do so. This failure demonstrates the appellant's lack of due diligence in pursuing his judicial appeal.

### III. CONCLUSION

Based on the information before the Court, the appellant has neither established that his untimely appeal was the direct result of Hurricane Ivan, nor demonstrated that he has acted with due diligence in pursuing his judicial appeal. Therefore, we conclude that he has not met his burden of establishing jurisdiction in this Court. *See McNutt* and *Bethea*, both *supra*. Accordingly, this appeal is DISMISSED for lack of jurisdiction.

12