# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 05-45

WILLIAM E. MCCREARY, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appellant's Motion for Reconsideration

(Decided      June 5, 2006   )

*Jeffrey A. Lamken*, *D. Kirk Morgan II*, and *Simon E. Stevens*, all of Washington, D.C., were on the pleading for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Richard Mayerick*, Deputy Assistant General Counsel; and *Gabrielle L. Clemons* (non-attorney practitioner), all of Washington, D.C., were on the pleading for the appellee.

Before GREENE, *Chief Judge*, and LANCE and SCHOELEN, *Judge*s.

SCHOELEN, *Judge*:  The appellant seeks review of an August 30, 2004, decision of the Board of Veterans' Appeals (Board).  In a September 2, 2005, opinion, the Court dismissed this appeal, holding that the appellant had not filed his Notice of Appeal (NOA) within 120 days after the date the Board mailed its decision, nor had he met a three-part test to establish that equitable tolling of the 120-day judicial-appeal period was appropriate. *McCreary v. Nicholson*, 19 Vet.App. 324 (2005).  Subsequently, the appellant, through counsel, filed a timely motion for reconsideration.  In response to a Court order, the appellant also filed a supplemental memorandum and an affidavit in support of his motion for reconsideration.  The Secretary filed a response to the appellant's motion for reconsideration and his supplemental memorandum.  Because of a change in the factual basis underlying our prior decision, we grant the appellant's motion for reconsideration.  *See Ashley*

*v. Derwinski*, 2 Vet.App. 307, 308 (1992).  However, after reconsideration, we again conclude that equitable tolling is not warranted in this case and we will dismiss this appeal.[1]

## I.  BACKGROUND

The original opinion in this case sets forth the factual and procedural background of this case, which we summarize briefly here.  *See McCreary*, 19 Vet.App. at 326-27.  The appellant filed his NOA with the Court on January 4, 2005, 127 days after the date stamped on the Board decision.  He acknowledged that his appeal was untimely in a signed, sworn statement accompanying his NOA.  In that statement, he attributed his untimely appeal to damage to his house as a result of Hurricane Ivan, which, on September 16, 2004, struck the Alabama coast near where his house is located.  *Id.* at 327 (taking judicial notice of information regarding Hurricane Ivan).  He stated that his papers related to his appeal were stored in boxes that were "misplaced" while he attempted to repair his house and to reach a settlement with his insurance company.  *Id.* at 326-27.  In response to an order from the Court asking the appellant to show cause why his appeal should not be dismissed, the appellant submitted a nearly identical statement.

In the September 2, 2005, opinion, the Court dismissed this appeal.  Based on a review of other Federal court decisions, we determined that extraordinary circumstances could be the basis for equitable tolling of the 120-day judicial-appeal period under 38 U.S.C. § 7266(a).  *Id.* at 328-32.  We adopted a three-part test to determine when equitable tolling based on extraordinary circumstances is justified:

> First, the extraordinary circumstance must be beyond the appellant's control.  Second, the appellant must demonstrate that the untimely filing was a direct result of the extraordinary circumstances.  Third, the appellant must exercise "due diligence" in preserving his appellate rights, meaning that a reasonably diligent appellant, under the same circumstances, would not have filed his appeal within the 120-day judicial appeal period.

*Id.* at 332 (citations omitted).  However, in applying this test to the circumstances and evidence presented by the appellant at the time, we determined that equitable tolling was not warranted because his untimely filing of his NOA was not a direct result of Hurricane Ivan and because the

---

[1]This opinion supplements the Court's September 2, 2005, opinion, which remains otherwise undisturbed.

evidence did not demonstrate that he had exercised due diligence in preserving his appellate rights. *Id.* at 332-34.

The Court granted the Veterans Consortium Pro Bono Program a stay of proceedings pursuant to Rule 5(a)(1)(B) of the Court's Rules of Practice and Procedure (Rules) so that the then-pro se appellant might obtain counsel. Counsel for the appellant entered an appearance and filed a motion for reconsideration pursuant to Rule 35. Because counsel for the appellant had limited time to consult with the appellant, the Court granted the appellant leave to file an amended motion for reconsideration. He did so on December 5, 2005.

As grounds for reconsideration, the appellant argues that he did not have the opportunity to show that he is entitled to equitable tolling under the standard first articulated in *McCreary*. He argues that, in prior instances where the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has articulated a new basis for equitable tolling, this Court has provided appellants the opportunity to submit evidence in support of their arguments for equitable tolling. *See, e.g., Claiborne v. Nicholson*, 19 Vet.App. 181, 182 (2005), *aff'd per curiam*, No. 05-7170, 2006 WL 701948 (Fed. Cir. Mar. 14, 2006). In his motion for reconsideration, the appellant made general assertions of the type of evidence he would submit to support his argument for equitable tolling, but he did not submit any evidence.

In light of the appellant's failure to submit any evidence accompanying his motion for reconsideration, on December 13, 2005, the Court ordered the appellant to file a supplemental memorandum, with supporting evidence, in support of his motion for reconsideration. The Court also ordered the Secretary to respond to the motion for reconsideration, the supplemental memorandum of law, and any additional evidence submitted by the appellant. *See* U.S. VET. APP. R. 35(g) (stating that the Court will not ordinarily grant reconsideration without seeking a response to the motion).

In response to the Court's order, on January 11, 2006, the appellant submitted a supplemental memorandum of law in support of his motion for reconsideration and attached his supporting affidavit. In his supplemental memorandum, he argues that he met each of the three parts of the *McCreary* test. Regarding whether Hurricane Ivan was an extraordinary circumstance beyond his control, he asserts that, in the September 2, 2005 opinion, the Court already found that to be the case.

*See McCreary*, 19 Vet.App. at 332 (stating that "it is obvious that a hurricane is a type of extraordinary circumstance that is beyond the appellant's control").

With respect to the second element of the *McCreary* test, the appellant argues that his untimely filing of his NOA was a direct result of Hurricane Ivan. He refers to his prior statement, in which he stated that he had "misplaced" his papers related to the appeal. *See id.* at 326. He attempts to clarify his prior statement by asserting that the hurricane damage was particularly extensive in the room containing his papers. Appellant's Supplemental Memorandum (Suppl. Mem.) at 4; Affidavit of William E. McCreary (McCreary Aff.) ¶ 4, 7. He asserts that because of the likelihood of imminent water and mold damage, he and his family hurriedly packed his papers into boxes, but he does not specifically recall placing his papers into any of the boxes. McCreary Aff. ¶ 4. He states that from the time of the hurricane until he found his papers on December 31, 2004, while looking for something else, he had not thought about the papers related to his appeal. McCreary Aff. ¶ 9. The appellant argues that the loss of his papers related to his appeal was a direct, imminent, and foreseeable response to the hurricane. Suppl. Mem. at 4-5. He specifically states his belief that "[b]ut for Hurricane Ivan, I have no doubt that I would have filed my appeal papers on time." McCreary Aff. ¶ 11.

Concerning the third element of the *McCreary* test, the appellant argues that he has exercised the due diligence required by the Court. He maintains that, while trying to support his family, he was required to live without power for weeks, to undertake expensive repairs to his house on his own, and to fight procedural hurdles with his insurance company. Suppl. Mem. at 5-6; McCreary Aff. ¶ 3-8. He explains that he had to make repairs to his house while spending 12 hours each day working and commuting. McCreary Aff. ¶ 6. He also stresses that his boxed papers had to be moved immediately from a heavily damaged portion of his house while he repaired it, "making their discovery and retrieval difficult if not impossible." Suppl. Mem. at 6. The appellant also cites extensions of time granted by other Government agencies as a result of Hurricane Ivan. *Id.* at 6-7 (citing extensions granted by (1) the Internal Revenue Service for filing quarterly tax returns and payments from September 15, 2004, until December 30, 2004; (2) the Pension Benefit Guaranty Corporation for certain deadlines until December 30, 2004; and (3) the Department of Labor for

filing certain forms and reports until December 30, 2004).[2] Finally, the appellant also argues that he demonstrated due diligence by immediately contacting his representative after finding the papers on December 30, 2004, and, on the first day his representative was available, meeting with him in order to file his NOA. McCreary Aff. ¶ 10.

On February 24, 2006, the Secretary filed a response to the appellant's motion for reconsideration and supplemental memorandum of law. In his response, the Secretary did not express a position on the adequacy of the appellant's submissions under the *McCreary* test. However, the Secretary raised the issue of the adequacy of the appellant's motion for reconsideration under the Court's Rules. We turn to that threshold issue first.

## II. ANALYSIS

### A. Motion for Reconsideration

Rule 35(e)(1) of the Court's Rules requires that motions for reconsideration "state the points of law or fact that the party believes the Court has overlooked or misunderstood." The Secretary asserts that, rather than articulating a point of law or fact that the Court has misunderstood, the appellant is merely attempting to present additional facts for the Court's initial consideration. However, we are satisfied that the appellant has sufficiently articulated a point of fact that the Court has misunderstood. Specifically, the appellant's supplemental memorandum identifies his admittedly inartful use of the term "misplaced" in his prior statement and the Court's interpretation of that word. Suppl. Mem. at 3 n.1, 3-4; *see McCreary*, 19 Vet.App. at 333. Thus, we are satisfied that the appellant's motion for reconsideration meets the criteria set forth in Rule 35.

In light of the appellant's additional submissions and in the interest of a full and fair consideration of the appellant's equitable tolling request, including assessment of all relevant facts, the Court will grant the appellant's motion for reconsideration. *See Ashley*, 2 Vet.App. at 308

---

[2]*See* Internal Revenue Service, *IRS Grants Tax Relief for Hurricane Ivan Victims* (Sept. 22, 2004), *available at* http://www.irs.gov/pub/irs-news/ir-04-118.pdf; Pension Benefit Guaranty Corporation, *Disaster Relief Relating to PBGC Deadlines in Response to Hurricane Ivan in Alabama, Florida, Louisiana, and Mississippi* (Oct. 13, 2004), *available at* http://www.pbgc.gov/practitioners/law-regulations-informal-guidance/disaster-relief-announcements/dr1189.html; U.S. Department of Labor, Employee Benefits Security Administration, *U.S. Labor Department Extends Annual Report Deadlines After Hurricane Ivan Hits Gulf Coast* (Sept. 30, 2004), *available at* http://www.dol.gov/ebsa/newsroom/pr0930a04.html.

(granting reconsideration based on a "marked change in the factual predicate"). We now proceed to reevaluate whether equitable tolling is appropriate and to consider the additional evidence the appellant has submitted.

B. Applicable Law

Neither party challenged the articulation of the applicable law regarding equitable tolling or the three-part test to determine whether equitable tolling based on extraordinary circumstances is appropriate. *See McCreary*, *supra*. Thus, the Court will not repeat the underlying analysis and will apply the three-part test articulated in *McCreary* to determine whether equitable tolling is warranted in this case. *See id.*, 19 Vet.App. at 332. We repeat several principles from our prior opinion that are relevant in this case. First, the appellant has the obligation "to produce any evidence supporting his claim for equitable tolling." *Id.* Second, the burden for filing an NOA in this Court is low. *Id.* at 333. Finally, an "appellant would not be ineligible for equitable tolling because he waited until the end of the judicial-appeal period to file an NOA." *Id.* at 334. However, in our prior opinion we favorably cited a case from the U.S. Court of Appeals for the Second Circuit, which required that "'the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll.'" *Id.* at 331 (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)).

C. Application of Equitable Tolling Standard to This Case

As before, we find that a hurricane is an extraordinary circumstance that is beyond the appellant's control. *Id.* at 332. Thus, we need only consider whether his untimely appeal was the direct result of Hurricane Ivan and whether he exercised due diligence in pursuing his appeal. Although we remain sympathetic to the hardship endured by the appellant, for the following reasons, we hold that he does not meet the criteria for equitable tolling of the judicial-appeal period.

The appellant's additional submissions in support of his motion for reconsideration do not establish that his untimely appeal was a direct result of Hurricane Ivan. *See id.* at 332. We first address his clarification of the circumstances surrounding the loss of his papers. In our prior opinion, we interpreted his original statement that he had "misplaced" his papers to mean that he had lost his papers in the attempt to settle with his insurance company and to make repairs to his house. *Id.* at 332-33. The additional evidence he submitted on reconsideration convinces the Court that he "misplaced" his papers as a direct result of Hurricane Ivan. However, this conclusion alone is not

6

sufficient to justify equitable tolling. Rather, he must demonstrate that the *untimely appeal* was a direct result of Hurricane Ivan. *See id.* at 332. In that regard, we conclude that the link between his missing papers and his untimely appeal is too attenuated for us to find that his untimely appeal was a direct result of Hurricane Ivan.

Specifically, we determined in our prior opinion that "it cannot be said that the appellant needed his paperwork to file an NOA in this Court and he has not demonstrated how the misplacement of it prevented him from doing so." *Id.* at 333. Significantly, the appellant does not assert that he filed his NOA late simply because he misplaced his papers. Rather, he asserts that he filed his NOA late because he had misplaced his papers and then he did not think about his appeal until he came across his papers while looking for something else. *See* McCreary Aff. ¶ 9 (stating that when he discovered his papers on December 31, 2004, it "was the very first time the papers had crossed my mind since the hurricane"). The fact that he forgot about his papers is the reason that he did not file a timely appeal. Thus, the Court understands that the appellant was preoccupied with the challenges of repairing his house and returning to his daily routine. However, the fact that he did not think about his appeal for three months because he was preoccupied makes his untimely appeal too tenuously linked to the hurricane itself to be the direct result of the hurricane.

We are not convinced that a reasonable person, in the circumstances of this case, acting with due diligence would have filed his NOA late. *See McCreary*, 19 Vet.App. at 332. As noted above, the burden of filing an NOA in this Court is very low. *See id.* at 333. A single phone call to his representative (who we assume would have advised him to file his NOA immediately to preserve his appellate rights) or a single correspondence expressing an intent to appeal his Board decision sent to the Court between the time Hurricane Ivan struck in September 2004 and the date his appeal was due, December 28, 2004, would have preserved his judicial appeal. *See id.* at 333. The appellant did neither because, as he admits, he forgot about his appeal in the aftermath of Hurricane Ivan. We assume that, had the appellant discovered his papers earlier, he would have filed his appeal sooner, likely within the 120 days after the Board's decision. However, the fact that he forgot about his lost papers for more than three months does not demonstrate the diligence necessary to establish that equitable tolling is appropriate. *See id.* at 331 (requiring party seeking equitable tolling to demonstrate due diligence "'throughout the period he seeks to toll'" (quoting *Smith*, 208 F.3d at 17)).

7

Moreover, the actions by certain Government agencies extending deadlines as a result of Hurricane Ivan tends to negate his claim for equitable tolling. Although we find the extensions of time granted by other Government entities to be relevant, those agencies' deadlines originally were set to expire between September 13, 2004, and December 30, 2004. *See* Suppl. Mem. at 6-7. The appellant's NOA, however, was not due until December 28, 2004. Even if we were to extend the judicial-appeal period in this case until December 30, 2004, as the Government agencies cited in the appellant's pleadings did, his appeal would still be untimely because he did not file his NOA until January 4, 2005. The action of these Government agencies reinforces our prior statement that we would be more inclined to toll the judicial-appeal period in this case had the hurricane struck later during the judicial-appeal period, in which case he would have had less time to get his affairs in order prior to the expiration of the judicial-appeal period. *See McCreary*, 19 Vet.App. at 334. However, the deadline for the appellant to file his NOA was more than three months after Hurricane Ivan struck.

Although the happenstance that reminded him of his appeal occurred close to the expiration of the 120-day judicial-appeal period, this proximity cannot distract us from the fact that he forgot about his appeal for several months. Though the appellant argues that his diligence after he found his paperwork justifies equitable tolling in this case (*see* Suppl. Mem. at 8-9), we cannot accept the appellant's argument that it is enough that he acted with diligence after he was reminded about his appeal. Our conclusion that the appellant did not exercise due diligence is based primarily on the belief that a reasonably diligent claimant, under these circumstances, who was dissatisfied with the Board's adjudication of his claim, would not have forgotten about his appeal for more than three months. The appellant has not demonstrated that the damage from Hurricane Ivan directly resulted in barriers beyond his control that continued to exist throughout the judicial-appeal period and prevented him from filing a timely NOA.

### III. CONCLUSION

After consideration of the appellant's and the Secretary's pleadings and the appellant's affidavit, the Court grants the appellant's motion for reconsideration. On reconsideration, however, the appellant has not established that his untimely appeal was the direct result of Hurricane Ivan, nor

8

demonstrated that he has acted with due diligence in pursuing his judicial appeal. Accordingly, we reaffirm our September 2, 2005, opinion and DISMISS this appeal as untimely.