# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2734

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal From the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Kenneth Ray Martin, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 15, 2005
Filed: May 27, 2005

_____

Before MELLOY, HEANEY, and FAGG, Circuit Judges.

_____

HEANEY, Circuit Judge.

Kenneth Ray Martin, a federal prisoner, appeals the district court's denial of his motion to vacate, set aside, or correct his sentence brought pursuant to 28 U.S.C. § 2255. The court found the motion untimely and that Martin presented no circumstances to excuse its tardiness. We disagree and therefore reverse.

## BACKGROUND

None of the facts relevant to this appeal are in dispute. Following a jury trial, Martin was convicted of conspiracy to distribute methamphetamine and possession

of methamphetamine with intent to distribute. He was sentenced to 121 months of imprisonment, to be followed by 60 months of supervised release. He appealed, and by opinion dated December 12, 2001, this court affirmed. United States v. Martin, 274 F.3d 1208 (8th Cir. 2001). In his direct appeal, he raised the issue of ineffective assistance of his trial counsel. We advised Martin that ineffective assistance claims are "'best evaluated on the basis of facts developed outside the original record,' and are therefore 'more properly raised in a habeas corpus petition brought under 28 U.S.C. § 2255.'" Id. at 1210 (quoting United States v. Christians, 200 F.3d 1124, 1126 (8th Cir. 1999)). Martin did not petition the Supreme Court for a writ of certiorari to review this decision. Accordingly, Martin's one-year period to file a § 2255 motion in district court began running on March 12, 2002. See Clay v. United States, 537 U.S. 522, 532 (2003) ("[F]or federal criminal defendants who do not file a petition for certiorari . . . on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires."); Sup. Ct. R. 13.1 (stating petition for certiorari must be filed within ninety days of judgment).

In May of 2002, Martin asked his appellate attorney, George Lasko, to file a § 2255 motion alleging ineffective assistance of his trial counsel. Lasko agreed to do so, but advised Martin to wait until late 2002 so that they could benefit from any supportive case law that was issued in the interim. On August 11, 2002, Martin wrote to Lasko about the § 2255 motion. Martin sent Lasko documentation in support of the motion, and requested Lasko to return copies because Martin was unable to make them in prison. Martin sent Lasko a pro se § 2255 motion in September of 2002. When Martin spoke to Lasko in November of 2002, Lasko commented that Martin's pro se motion "looked good but needed some minor changes." (J.A. at 22.) During this conversation, Martin voiced his preference to have the motion filed soon, since some of his fellow inmates told him there was a one-year deadline on § 2255 motions. Lasko "responded that the inmates didn't know what they were talking about, and that [Martin] shouldn't worry." (Id.) Lasko did not return any of Martin's documents or forward copies to him.

During the fall and winter 2002 and 2003, Martin's wife was also trying to communicate with Lasko. Audrey Martin "made approximately forty telephone calls to Lasko's office to inquire about the [§ 2255] motion," but Lasko was seldom responsive. (Dist. Ct. Order at 3.) She was able to speak with Lasko on November 23, 2002, when she paid him an additional $1,500 for Martin's case. Lasko told Audrey Martin that the § 2255 motion would be filed shortly after Thanksgiving. Audrey Martin saw Lasko again on December 24, 2002, and Lasko told her that they would be "in court" in anywhere from thirty to sixty days. (J.A. at 20, 24.) Lasko further told Audrey Martin that there was no deadline for filing § 2255 motions.

In either December of 2002 or January of 2003, Martin was able to speak with Lasko by telephone. Martin asked Lasko about the § 2255 motion, and Lasko stated that Martin "would be seeing some kind of relief in the near future," (id. at 22), either by way of a sentence reduction or a new trial, (id. at 20). This was Martin's last conversation with his attorney. From that time through May of 2003, Lasko refused Martin's calls, refused to speak with or return the telephone calls of any other members of Martin's family, failed to appear for two scheduled appointments with Martin's wife, and failed to return any of Martin's supporting documents to him.

Martin's filing deadline passed on March 12, 2003, and Lasko had still not filed the § 2255 motion. Martin sent Lasko a letter dated March 16, 2003 expressing his dissatisfaction with Lasko. Martin noted that over one year had passed since his conviction, and told Lasko that he hoped that Lasko was correct in his belief that there was "no time restriction to an initial 2255 motion." (Id. at 20.) Because Lasko had not made Martin's case a priority, Martin requested that Lasko provide Martin with all of the documents in Martin's case within fifteen days. Lasko did not respond to this demand.

By letter dated May 19, 2003, Martin again tried to contact Lasko. He reiterated his frustration about not receiving word from Lasko for several months, as well as uncertainty about the status of his case:

> Since early on in January of [2003], I have not been able to communicate with you by phone. I have some concerns that the time to file a 2255 has expired. I would like you to send a letter confirming that you have filed a 2255 or not. I cannot wait any longer. If my case has not been filed, please send me a copy of everything you have so I can file immediately for myself. My health is getting worse and now my daughter has become very ill also. I need some answers and some direction.

(May 19, 2003 letter from Martin to Lasko.)[1] Lasko did not respond to this letter.

After months of trying, Audrey Martin was able to reach Lasko in May of 2003. Lasko told her that he had filed papers in Martin's case. She responded that according to the court record, nothing had been filed, and that the clerk's office informed her documents are logged within forty-eight hours of receipt. Lasko told her that the courts "always say that." (J.A. at 25.) She asked him for file-stamped copies of the documents he claimed to file, but he did not provide them.

In June of 2003, both Martin and his wife filed complaints with and sent letters to the State Bar of California, where Lasko was licensed to practice. Both letters recounted Lasko's failure to communicate with the Martins, and asked for the Bar's assistance in determining the status of Martin's case. The complaints triggered an investigation into Lasko's conduct, which culminated in his resignation on July 16, 2003.

---

[1]This document was affixed as supporting documentation to Martin's district court motion directing Lasko to return documents, available under docket number 120 in the Southern District of Iowa case numbered 4:99-CR-184.

In early July of 2003, Martin prepared and filed a pro se motion for an extension of time to file his § 2255 motion in district court, stating that the motion had not been filed because of Lasko's misconduct.[2] Martin also sought an order from the court directing Lasko to return Martin's paperwork so that Martin could prepare the § 2255 motion. By order dated July 23, 2003, the district court denied Martin's motions, but advised Martin to file a § 2255 motion within fourteen days. Martin complied by filing a pro se § 2255 motion on August 1, 2003. The district court denied the motion as untimely, finding that equitable tolling did not excuse Martin's late filing. This appeal followed.

## ANALYSIS

Our initial task is to decide, as a matter of first impression ,whether the doctrine of equitable tolling is available to Martin as a § 2255 movant. While we have decisively held that equitable tolling applies to state petitions for habeas corpus brought pursuant to 28 U.S.C. § 2254, we "have yet to consider whether equitable tolling can apply to a § 2255 petition." United States v. Bell, 68 Fed. Appx. 762, 763 n.2 (8th Cir. 2003) (unpublished decision) (citing Paige v. United States, 171 F.3d 559, 561 (8th Cir. 1999)). We now hold that it does. The analysis recently presented by the Ninth Circuit is eloquently persuasive in this regard:

> [Sections 2254 and 2255] have the same operative language and the same purpose. We fail to see any reason to distinguish between them in this respect. Other courts of appeals have noted the congruence. See United States v. Riggs, 314 F.3d 796, 799 n.6 (5th Cir. 2002) (holding

---

[2]Martin's motion is dated July 1, 2003, but was not filed with the clerk's office until July 10, 2003. Although the prison mailbox rule would likely make the effective filing date of this motion the date he placed it in the prison mail system, see Moore v. United States, 173 F.3d 1131, 1135 (8th Cir. 1999), Martin does indicate when he mailed this motion, and resolution of this issue is not critical to our decision.

that for purposes of equitable tolling, the sections are interpreted similarly); Green v. United States, 260 F.3d 78, 82 (2d Cir. 2001) (holding that § 2255 is similar to § 2254 and that equitable tolling is similarly available); Dunlap v. United States, 250 F.3d 1001, 1004 (6th Cir. 2001) (holding that equitable tolling applies to § 2255); United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000) (holding that the § 2255 time limitation is subject to equitable tolling); United States v. Willis, 202 F.3d 1279, 1281 n.2 (10th Cir. 2000) (holding that there is no reason to treat the two sections differently); Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir.1999) (stating that there is no obvious reason to treat the sections differently–they are both garden variety statutes of limitations). Thus, we now specifically declare what must seem obvious to many:  The statute of limitations contained in § 2255 is subject to equitable tolling.

United States v. Battles, 362 F.3d 1195, 1196 (9th Cir. 2004).

The government directs us to our statement in Paige that at least one circuit had concluded that equitable tolling applied in state habeas petitions filed pursuant to § 2254 but not their federal § 2255 counterparts.  See Paige, 171 F.3d at 561 (citing Hoggro v. Boone, 150 F.3d 1223, 1226 (10th Cir. 1998)).  Since our decision in Paige, however, the Tenth Circuit has clarified its position to harmonize it with the majority of circuits.  In United States v. Willis, 202 F.3d 1279, 1281 n.2 (10th Cir. 2000), the court noted that Congress did not intend to differentiate between state and federal prisoners in determining their time limitations for filing habeas petitions, and assumed that the doctrine of equitable tolling would be available for federal prisoners, id. at 1281 n.3.

In this case, the district court correctly held that equitable tolling was available, but ruled that Martin did not present circumstances that would warrant equitably tolling his filing deadline.  "Our court has not yet decided whether a district court's refusal to apply equitable tolling is reviewed *de novo* or for an abuse of discretion." Jihad v. Hvass, 267 F.3d 803, 806 n.3.  Our sister circuits are split on the issue.  See

id. (noting that the Fifth and Tenth Circuits review the issue for an abuse of discretion, while the Sixth, Ninth, Eleventh, and D.C. Circuits have reviewed it de novo). Although in Jihad we left open the question, we reviewed the district court's equitable tolling decision de novo because the district court treated the issue as one of law. Id.; see also Curtis v. Kemna, 22 Fed. Appx. 663 (8th Cir. 2001) (unpublished decision) (citing Jihad for the proposition that this court generally reviews de novo a district court's equitable tolling decisions in the state habeas context).

A de novo standard of review is appropriate in this case. First, as with Jihad, the district court treated the issue as one of law, and neither party contests any of the court's factual findings. Compare Jihad, 267 F.3d at 806 n.3; see also Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) ("If the facts underlying a claim for equitable tolling are undisputed, the question of whether the statute of limitations should be equitably tolled is [] reviewed de novo."); Rouse v. Lee, 339 F.3d 238, 248 (4th Cir. 2003) (en banc) (same). Although Jihad concerned a state habeas petitioner, our court has characterized § 2255 motions as "the statutory analogue of habeas corpus for persons in federal custody." Poor Thunder v. United States, 810 F.2d 817, 821 (8th Cir. 1987). It would be incongruous to treat equitable tolling decisions differently under two statutes whose purpose is the same, and whose primary difference relates only to whether the affected person is in state or federal custody. In other contexts, our cases have supported the view that where a district court finds a plaintiff's explanation for tardy filing to be insufficient as a matter of law, the court is making a legal judgment subject to de novo review. See, e.g., Anderson v. Unisys Corp., 47 F.3d 302, 305-07 (8th Cir. 1996) (reversing the district court's refusal to equitably toll the plaintiff's ADEA claims while granting no deference to the district court's belief that the plaintiff's excuse was inadequate). We see no reason to deviate from that position here.

Finally, we must consider whether the district court erred in its determination that Martin could not benefit from the doctrine of equitable tolling. In the context of

state habeas proceedings, our court has held that equitable tolling is appropriate where "extraordinary circumstances" beyond a prisoner's control prevent timely filing. Jihad, 267 F.3d at 805; Kruetzer v. Bowersox, 231 F.3d 460, 463 (8th Cir. 2000); Paige, 171 F.3d at 561. The same analysis guides us here.

Ineffective assistance of counsel, where it is due to an attorney's negligence or mistake, has not generally been considered an extraordinary circumstance in this regard. Beery v. Ault, 312 F.3d 948, 951 (8th Cir. 2002); see also Rouse v. Lee, 339 F.3d 238, 248-49 (noting that a majority of the circuits have held that basic attorney errors such as miscalculation of a filing deadline are generally insufficient to support equitable tolling). We have acknowledged, though, that serious attorney misconduct, as opposed to mere negligence, "may warrant equitable tolling." Beery, 312 F.3d at 952. Other circuits have also held that an attorney's misdeeds may equitably toll the statute of limitations. Spitsyn v. Moore, 345 F.3d 796, 798 (9th Cir. 2003) (tolling state habeas petitioner's statute of limitations due to the "extraordinary circumstance" of egregious misconduct on the part of petitioner's attorney); Baldayaque v. United States, 338 F.3d 145, 152 (2d Cir. 2003) ("It is not inconsistent to say that attorney error *normally* will not constitute the extraordinary circumstances required to toll the AEDPA limitations period while acknowledging that at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary."); United States v. Wynn, 292 F.3d 226, 230 (5th Cir. 2002) (holding that petitioner's "allegation that he was deceived by his attorney into believing that a timely § 2255 motion had been filed on his behalf presents a 'rare and extraordinary circumstance' beyond petitioner's control that could warrant equitable tolling of the statute of limitations" if petitioner reasonably relied on the attorney's misrepresentations); Nara v. Frank, 264 F.3d 310, 320 (3d Cir. 2001) (noting that claims of attorney misconduct may provide a basis for equitable tolling), overruled on other grounds by Carey v. Saffold, 536 U.S. 214 (2002); cf. Rouse, 339 F.3d at 250 n.14 (suggesting that equitable tolling may be appropriate where attorney conduct reaches the level of "utter abandonment"); but see Modrowski v. Mote, 322 F.3d 965, 968-69 (7th Cir.

2003) (rejecting attorney misconduct as a basis for equitable tolling because such conduct is "attributable to the client").

Baldayaque and Spitsyn are particularly instructive. In Baldayaque, a federal prisoner sought § 2255 relief, and his wife specifically asked her husband's attorney to file a "2255." Thereafter, the attorney engaged in repeated misconduct. First, he told Baldayaque's wife that it was too late to file a § 2255 motion, when in truth there was over a year remaining on his statute of limitations. Then, when pressed by Baldayaque's wife about the status of his case, the attorney "assured her that he was 'just waiting for a court date,'" although he had apparently not filed anything at that time. Later, the attorney filed a motion to modify Baldayaque's sentence, but it was denied. Baldayaque was not notified about the motion or its denial; instead, the attorney informed his wife that there was nothing more they could do. Baldayaque later filed his own § 2255 motion, which the district court denied as untimely. The Second Circuit reversed, finding that Baldayaque's attorney's conduct–not filing a § 2255 motion despite a directive to do so, giving erroneous legal advice without performing even cursory research, and failing to communicate with his client–was "far enough outside the range of behavior that reasonably could be expected by a client that they may be considered 'extraordinary'" and a may provide a basis for tolling of the statute of limitations. Baldayaque, 338 F.3d at 152-53.

In Spitsyn, a state prisoner's mother hired a lawyer almost a full year before his habeas filing deadline. After months of inactivity, Spitsyn and his mother wrote to the attorney, but received no response. As the filing deadline approached, Spitsyn and his mother contacted the state bar association seeking assistance. Spitsyn also sent his attorney another letter asking for his file. The attorney did not respond to any of these letters before the filing deadline passed. Finally, after the deadline, the attorney sent a letter "expressing regret for not following through with the case and returning the Spitsyns' payment." Months later, the attorney returned Spitsyn's file. Spitsyn then filed a pro se habeas petition, which the district court dismissed as

untimely. On appeal, the Ninth Circuit reversed, finding that "the misconduct of Spitsyn's attorney was sufficiently egregious to justify equitable tolling of the one-year limitations period under AEDPA." Spitsyn, 345 F.3d at 801.

Arguably, Martin's case involves conduct more egregious than in either Baldayaque or Spitsyn. First, Lasko consistently misled Martin. Lasko told Martin and his wife that there was no such thing as a one-year filing deadline for § 2255 motions. Then, in a November meeting, he told Martin's wife that he would be filing the motion within two weeks. Lasko then told Martin that he would be seeing some type of relief in the near future. Finally, after the deadline had passed, Lasko told Martin's wife that he *had* filed papers on Martin's behalf.[3] Of course, none of this was true.

Moreover, Lasko completely failed to communicate with his client.[4] Martin's wife logged approximately forty telephone calls to Lasko's office, none of which were returned. She went to two appointments at Lasko's office, but he neglected to attend them. Martin's family tried to contact Lasko, but he refused to speak with them. Martin himself tried to communicate with Lasko, but Lasko did not take his telephone calls. Martin sent Lasko original documents for his § 2255 motion, but

---

[3]The fact that Martin's attorney deceived him and his family by stating that papers had been filed and that they would be in court soon parallels the situation in Seitzinger v. Reading Hospital & Medical Ctr., 165 F.3d 236 (3d Cir. 1999). There, the Third Circuit held that extraordinary circumstances would excuse the plaintiff's late filing where her attorney misrepresented that her Title VII claim had already been filed. Id. at 240-41.

[4]As noted above, when Lasko did communicate with Martin or his wife, he lied to them. We do not consider this to be an effective method of communication.

Lasko never returned them or copies of them, despite Martin's demand that Lasko do so.[5]

In sum, Lasko consistently lied to Martin and his wife about the filing deadline; repeatedly lied to Martin and his wife about the status of Martin's case; refused to communicate with Martin or his family; neglected to file any documents, belated or not, on Martin's behalf; and failed to return any of Martin's paperwork to him despite repeated requests and then demands. Such conduct presents the type of egregious attorney misconduct that may excuse an untimely filing.

Equitable tolling should only apply where the petitioner or movant has demonstrated diligence in pursuing the matter. Schlueter v. Varner, 384 F.3d 69, 77 (3d Cir. 2004). After carefully reviewing the circumstances of Martin's case, we are convinced that he has met this burden. He hired Lasko well in advance of his filing deadline. As a matter of fact, Lasko represented Martin in his direct appeal, where Martin tried to raise the same ineffective assistance of counsel claim that forms the basis for his § 2255 motion. Martin and his wife did everything in their power to stay abreast of the status of his case, and provided Lasko with original documents to assist in the matter. When Martin lost faith in Lasko after months of deception and neglect, Martin filed a complaint with the California Bar. He also filed motions with the district court seeking an extension of time and the return of the documents he sent to Lasko so that he could prepare a § 2255 motion. When those motions proved fruitless, Martin promptly filed a pro se § 2255 motion.

---

[5]Lasko's failure to return Martin's papers to him put Martin in a similar position to the petitioner in Valverde v. Stinson, 224 F.3d 129 (2d Cir. 2000), where corrections officers confiscated the petitioner's habeas papers shortly before his filing deadline. In that instance, the Second Circuit held that this circumstance would be sufficient to toll the statute of limitations. Id. at 133-34.

While the district court suggested that Martin could have filed his own § 2255 motion as early November of 2002 (when he first expressed concern about the one-year deadline), we do not agree. Lasko specifically told Martin time and again that there was no deadline, and that those who told him otherwise were wrong. Thereafter, Lasko intimated that relief was forthcoming. Martin and his wife sought more information, but Lasko either ignored them or perpetuated further lies that Martin's documents had already been filed, going so far as to impugn the court's docket system rather than admit the truth. We will not fault Martin for relying on his attorney here.

## CONCLUSION

This is not a case where a petitioner has himself to blame for an untimely filing, nor are we dealing with attorney negligence, simple error, or even abandonment. Lasko misrepresented the law, misrepresented the status of Martin's case, and retained possession of documents that were crucial to Martin's claim. Martin reasonably relied on Lasko's misrepresentations, and demonstrated due diligence in pursuing his § 2255 claim. Thus, he is entitled to equitable tolling. We therefore reverse and remand to the district court with directions to consider the merits of Martin's § 2255 motion.

_____