# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-2341

LARRY J. NELSON, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal From the Board of Veterans' Appeals

(Decided     April 21. 2006  )

*Paul B. Eaglin*, of Fairbanks, Alaska, was on the pleadings for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Richard Mayerick*, Deputy Assistant General Counsel; and *Gabrielle L. Clemons*, all of Washington, D.C., were on the pleadings for the appellee.

Before KASOLD, LANCE, and DAVIS, *Judges*.

DAVIS, *Judge*: The appellant, veteran Larry J. Nelson, seeks review of a July 13, 2004, Board of Veterans' Appeals (Board) decision denying him an earlier effective date for his post-traumatic stress disorder (PTSD) claim. The appellant has requested oral argument. Because Mr. Nelson filed an untimely Notice of Appeal (NOA), the Court addresses whether it should equitably toll the 120-day judicial-appeal deadline based on excusable neglect or extraordinary circumstances. The appellant has not met his burden of establishing that he filed a timely NOA, and equitable tolling is not warranted in this case. Thus, the Court will dismiss Mr. Nelson's appeal for lack of jurisdiction and deny his request for oral argument.

## I. BACKGROUND

Mr. Nelson served in the U.S. Military from August 1967 to April 1976. On July 13, 2004, the Board denied his claim for an earlier effective date for his PTSD claim. Attorney Allen Vacura represented the veteran before the Board, but had no experience before this Court and felt

1

uncomfortable handling the veteran's appeal. Thus, he attempted to hire Attorney Mike Zamboni, who had represented the veteran in a previous appeal to this Court, to handle Mr. Nelson's appeal once again. Upon request, Attorney Vacura sent Attorney Zamboni a copy of the Board's 2004 decision and assumed that Attorney Zamboni would file an NOA on the veteran's behalf. However, after he sent Attorney Zamboni a copy of the Board decision, Attorney Vacura never heard from Attorney Zamboni.

Mr. Nelson, cognizant of the filing deadline, attempted to contact Attorney Vacura several times, and on at least one occasion, he specifically asked Attorney Vacura about the impending NOA deadline. According to the veteran, Attorney Vacura dismissed his worries and told him that "deadlines are for veterans, not lawyers, or words to that effect," meaning that "lawyers can get around deadlines by time extensions or some technique based on their knowledge as lawyers." Nelson Affidavit (Aff.) ¶ 5. Mr. Nelson admits that he did not believe Attorney Vacura and became angry and concerned about his case. However, despite his anger and mistrust, Mr. Nelson did not hire other counsel, nor file an NOA on his own behalf.

As the November 10, 2004, deadline for filing the NOA loomed, Attorney Vacura left Attorney Zamboni a series of messages via telephone, e-mail, and fax in an attempt to get a status update regarding Mr. Nelson's case. Because he did not hear from Attorney Zamboni, on Monday, November 15, 2004, five days after the deadline for filing an NOA had expired, Attorney Vacura called the Public Office of this Court to check on the status of the veteran's case. After being informed that no NOA had been filed, Attorney Vacura alleges that he left three messages with a supervising processing clerk, but that his messages went unreturned.[1] Finally, on December 1, 2004, still unable to contact Attorney Zamboni, Attorney Vacura filed an NOA weeks after it was due "out of an abundance of caution in order to assist Mr. Nelson in keeping his case alive until he can either find Mr. Zamboni or retain other appellate counsel to assist him in this matter." Vacura Aff. ¶ 9 (Dec. 1, 2004). The Court received the NOA on December 3, 2004, 143 days after the Board issued its decision.

---

[1]Notwithstanding Attorney Vacura's allegations, the policy of this Court's Public Office is to return phone calls from veterans and attorneys. In any case, each of his calls to the Public Office was placed after the NOA deadline had expired.

## II. ANALYSIS

### A. Jurisdiction

This Court's jurisdiction derives exclusively from statutory grants of authority provided by Congress and may not be extended beyond that permitted by law. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988). The ultimate burden of establishing jurisdiction rests with the appellant. *See McNutt v. G.M.A.C.*, 298 U.S. 178, 189 (1936); *Bethea v. Derwinski*, 2 Vet.App. 252, 255 (1992). Rule 4 of the Court's Rules of Practice and Procedure (Rules) and 38 U.S.C. § 7266(a) require a claimant to file an NOA with this Court within 120 days after notice of the Board decision is mailed to the appellant, and to the appellant's authorized representative, if any. Moreover, this Court has jurisdiction to determine its own jurisdiction over a case. *Henderson v. West*, 12 Vet.App. 11, 14 (1998). If a claimant fails to file a timely NOA, this Court must dismiss his claim for lack of jurisdiction unless it finds that the jurisdictional period should be tolled. *See McCreary v. Nicholson*, 19 Vet.App. 324, 327 (2005). Mr. Nelson concedes that his appeal is untimely. However, he asks the Court to equitably toll the 120-day judicial-appeal deadline by either adopting an "excusable neglect" standard or by finding extraordinary circumstances in his case.

### B. Equitable Tolling Generally

This Court may toll the 120-day judicial-appeal period under certain, limited circumstances. However, equitable tolling is only appropriate "when the principles of equity would make the rigid application of a limitation period unfair." *Schlueter v. Varner*, 384 F.3d 69, 76 (3d Cir. 2004). In *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990), the U.S. Supreme Court held that equitable tolling applies to suits against the United States and identified two situations when equitable tolling has been recognized–first, when the claimant has "actively pursued his judicial remedies by filing a defective pleading during the statutory period," or second, when "the claimant has been induced or tricked" by the opposing party's misconduct. *See also Bailey (Harold) v. West*, 160 F.3d 1360 (Fed. Cir. 1998) (en banc) (holding that equitable tolling applies to the 120-day judicial-appeal period for filing an NOA under 38 U.S.C. § 7266(a)).

In *Irwin,* the Supreme Court emphasized that courts are "much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."

498 U.S. at 96.  In *Mapu v. Nicholson*, 397 F.3d 1375, 1380 (Fed. Cir. 2005), the United States Court of Appeals for the Federal Circuit (Federal Circuit) noted that, in applying the doctrine of equitable tolling, "we have rejected the approach of looking to whether a particular case falls within the facts specifically identified in *Irwin* or one of our prior cases."  Accordingly, this Court is free to extend the principles of equitable tolling to new situations when warranted and has cautiously chosen to do so when appropriate. *See McCreary*, 19 Vet.App. at 330; *see also Brandenburg v. Principi*, 371 F.3d 1362, 1364 (Fed. Cir. 2004) (holding that 120-day judicial-appeal period may be equitably tolled based on appellant's filing NOA at location other than Court); *Arbas v. Nicholson*, 403 F.3d 1379, 1381 (Fed. Cir. 2005) (holding that physical illness may justify equitable tolling); *Barrett v. Principi*, 363 F.3d 1316, 1318 (Fed. Cir. 2004) (holding that mental illness can justify equitable tolling).

C.  Equitable Tolling and "Excusable Neglect"

Mr. Nelson asks this Court to equitably toll the 120-day judicial-appeal period by embracing the "excusable neglect" standard enunciated in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993).  However, *Pioneer* is inapposite to the facts and circumstances here.  In *Pioneer*, the Supreme Court established a four-part balancing test for determining whether there has been "excusable neglect" within the meaning of Federal Rule of Bankruptcy Procedure 9006(b)(1).  507 U.S. at 395.  The Supreme Court held that an attorney's inadvertent failure to file a proof of claim by the bar date (that is, the deadline) can constitute "excusable neglect" within the meaning of Rule 9006(b)(1).  Unlike this Court's Rules of Practice and Procedure, the Federal Rules of Bankruptcy Procedure include a specific provision that enables Federal bankruptcy courts to excuse untimely filings when the failure to act in a timely fashion was the result of "excusable neglect."  FED. R. BANKR. P. 9006(b)(1).  The Federal Rules of Appellate Procedure have a similar provision, granting Federal district courts the ability to extend the time to file an NOA if a party shows "excusable neglect" or good cause.  FED. R. APP. P. 4(a)(5)(A)(ii).  Likewise, the Federal Rules of Civil Procedure contain a provision for extending time limits because of "excusable neglect."  FED. R. CIV. P. 6(b).  However, this Court's Rules of Practice and Procedure do not provide for claims of "excusable neglect."  Thus, *Pioneer* is inapposite to a statutory and regulatory scheme that does not use or require the interpretation of "excusable neglect."

Moreover, in *Irwin*, the seminal equitable tolling case, the Supreme Court refused to equitably toll a 30-day filing period when the complainant's attorney was out of the country and failed to file an employment discrimination complaint in a timely manner. The Supreme Court specifically noted that the attorney's conduct constituted a "garden variety claim of excusable neglect" that did not justify equitable tolling. *Irwin*, 498 U.S. at 96. Similarly, in *Gilbert v. Secretary of Health and Human Services*, 51 F.3d 254 (Fed. Cir. 1995), the Federal Circuit rejected ordinary attorney negligence as a basis for equitable tolling. Under the National Childhood Vaccine Injury Act of 1986 (Vaccine Act), 42 U.S.C. § 300aa-21(a), subsequent to a decision by the United States Court of Federal Claims (Federal Claims Court), a claimant has 90 days to file with the clerk of the Federal Claims Court a written election whether to accept the judgment of the court or to file a civil action for damages. If no election is filed within the specified time period, the claimant is deemed to have filed an election to accept the judgment of the court. *See* 42 U.S.C. § 300aa-21. In *Gilbert*, the claimant failed to file a timely written election with the Federal Claims Court after the court entered a final judgment. The claimant's sole justification for failing to file a timely election was that his lawyer made a mistake and erroneously believed that filing a civil damage action within the 90-day period constituted a valid election under the Vaccine Act. After expressing utter confusion regarding how an attorney could read the statute in the manner that the claimant's attorney did, the Federal Circuit noted, "'Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.' The negligence of [the claimant's] attorney does not justify applying equitable tolling." *Gilbert*, 51 F.3d at 257 (quoting *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)). In light of *Irwin* and *Gilbert*, and the fact that our Rules contain no mention of "excusable neglect," we refuse to extend equitable tolling to cases involving "excusable neglect."

### D. Equitable Tolling and Extraordinary Circumstances

Mr. Nelson also argues that his claim should be equitably tolled based on extraordinary circumstances. In *McCreary*, 19 Vet.App. at 330, the Court held that "extraordinary circumstances" present another situation in which the 120-day judicial-appeal period can be equitably tolled. To determine when extraordinary circumstances warrant equitable tolling, the Court adopted a three-part test:

5

First, the extraordinary circumstance must be beyond the appellant's control. Second, the appellant must demonstrate that the untimely filing was a direct result of the extraordinary circumstances. Third, the appellant must exercise "due diligence" in preserving his appellate rights, meaning that a reasonably diligent appellant, under the same circumstances, would not have filed his appeal within the 120-day judicial-appeal period.

*Id*. at 332 (citations omitted). The Court noted that although the test does not require that it be impossible for the appellant to meet the deadline, it does ensure that the equitable-tolling exception does not swallow the 120-day judicial-appeal period rule set forth in 38 U.S.C. § 7266(a). *Id*.

Under *McCreary*, the veteran must first demonstrate the existence of an extraordinary circumstance beyond his control. Unfortunately, no bright line rule or test exists for determining what constitutes an extraordinary circumstance. Judges must make such determinations on a case-by-case basis, undoubtedly taking solace from Justice Potter Stewart's famous statement that he would not attempt to define obscenity, but that "I know it when I see it." *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (Justice Stewart concurring). In certain cases, such a finding is straightforward. For example, in *McCreary*, this Court noted: "[I]t is obvious that a hurricane is a type of extraordinary circumstance. . . ." *McCreary*, 19 Vet.App. at 332.

As noted above*,* it is clear that ordinary attorney neglect, such as missing a filing deadline, does not rise to the level of an extraordinary circumstance, and thus does not warrant equitable tolling. *See Irwin*, 498 U.S. at 96; *Gayle v. United Parcel Serv., Inc.*, 401 F.3d 222, 227 (4th Cir. 2005); *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1170 (9th Cir. 2002); *see also Gilbert*, 51 F.3d at 257. In fact, the Supreme Court has explicitly stated that represented parties are deemed bound by the acts of their lawyer-agents, even in cases of neglect. *See Irwin,* 498 U.S. at 96.

In contrast, several Federal courts of appeal have held egregious attorney misconduct to constitute an extraordinary circumstance justifying the application of equitable tolling principles. *See United States v. Martin*, 408 F.3d 1089, 1095 (8th Cir. 2005) (finding extraordinary circumstance when attorney repeatedly lied to client about existence of filing deadline and status of case, refused to communicate with client, neglected to file any documents, belated or not, and failed to return any of client's paperwork despite repeated requests and demands); *Baldayaque v. United States*, 338 F.3d 145, 152-53 (2d Cir. 2003) (finding extraordinary circumstance when attorney

ignored client's specific instructions to file habeas corpus petition, failed to conduct any legal research, and failed to meet or speak with client); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (finding extraordinary circumstance when attorney deceived client into believing that attorney had filed a timely motion); *see also Spitsyn v. Moore*, 345 F.3d 796, 801 (9th Cir. 2003) (finding attorney conduct sufficiently egregious to justify equitable tolling when, despite being hired nearly a full year in advance of habeas corpus petition deadline, attorney failed to prepare and file the petition, refused to return phone calls, and withheld file after client's request to return it, rendering it nearly impossible for prisoner to file the substantive pleading); *Seitzinger v. Reading Hosp. and Med. Ctr.*, 165 F.3d 236, 237-38 (3d Cir. 1999) (remanding case after noting that attorney misconduct could justify equitable tolling when attorney affirmatively lied to his duly diligent client by telling her that he had filed a claim when in fact he had not); *but see Modrowski v. Mote*, 322 F.3d 965, 968 (7th Cir. 2003) (refusing to equitably toll deadline despite attorney's incapacity, noting that attorney misconduct, regardless of whether it is negligent, grossly negligent, or willful, is attributable to client.)

Here, the Court cannot characterize Attorney Vacura's actions as egregious misconduct. Rather, we hold that his actions constitute nothing more than garden variety neglect. *Irwin*, 498 U.S. at 96; *see Gilbert*, 51 F.3d at 257. Thus, the Court cannot find the existence of an extraordinary circumstance.

Because of a breakdown in communications, Attorney Vacura assumed that Attorney Zamboni would handle the veteran's appeal when the latter asked for a copy of the Board's decision. Although such an assumption was probably negligent, we cannot hold that it rose to the level of egregious misconduct, especially considering the fact that Attorney Zamboni had been substituted as counsel for the veteran in an earlier appeal to this Court. In addition, as the NOA deadline neared, Attorney Vacura did make some initial attempts to fulfill his responsibility. For example, he attempted to contact Attorney Zamboni several times to check the status of the veteran's case. When he did not hear from Attorney Zamboni, Attorney Vacura contacted this Court to see whether an NOA had been filed on the veteran's behalf. When he learned that no filing had taken place, Attorney Vacura filed an untimely NOA. It is certainly true that a competent attorney would have filed a timely NOA, especially considering the low burden for filing an appeal with this Court. *See*

*McCreary*, 19 Vet.App. at 333. However, unlike the attorneys in *Wynn* and *Seitzinger*, both *supra*, at no time did Attorney Vacura tell the veteran that he had filed an NOA on his behalf. *See Wynn*, 292 F.3d at 230; *Seitzinger*, 165 F.3d at 237-38. Moreover, unlike the attorneys in *Martin* and *Spitsyn*, both *supra*, Attorney Vacura never refused to return the veteran's paperwork. *See Martin*, 408 F.3d at 1095; *Spitsyn,* 345 F.3d at 801. Instead, Attorney Vacura misled the veteran only when he told the veteran that he should not be concerned about the NOA deadline because attorneys know how to get around such deadlines. Even then, Mr. Nelson was cognizant of the deadline and admits to not believing Attorney Vacura and growing angry. At that point, he was on notice that Attorney Vacura was behaving in a negligent manner, yet Mr. Nelson did not secure different counsel, nor file an NOA on his own behalf.

Because Attorney Vacura's behavior does not rise to the level of egregious misconduct, the Court need not decide at this time whether egregious misconduct can constitute an extraordinary circumstance for the purposes of equitable tolling. However, it is important to note that establishing the existence of an extraordinary circumstance is only the first hurdle a veteran must clear to persuade this Court to equitably toll a deadline. As discussed above, the extraordinary circumstance also must be beyond the veteran's control and directly result in the untimely filing, and the veteran must have exercised due diligence in pursuing his appellate rights. In other words, the veteran must show that a reasonably diligent appellant, under the same circumstances, would not have filed his appeal within the 120-day judicial-appeal period. *McCreary*, 19 Vet.App. at 332. Even if we were to hold that an extraordinary circumstance exists in this case, we could not equitably toll the deadline because the veteran has not exercised due diligence in pursuing his appeal. To the contrary, Mr. Nelson admits that he was cognizant of the appeal deadline and that he did not believe Attorney Vacura's statement that the NOA deadline only existed for veterans, not lawyers. He also admits that he grew angry and believed that Attorney Vacura was dropping his case and would not handle his appeal. Under these circumstances, a veteran exercising due diligence would not have remained idle and allowed the NOA deadline to expire without hiring different counsel or attempting to file an NOA on his own behalf, regardless of whether or not he felt competent to file an NOA. The requirements for filing an NOA are minimal. *McCreary*, 19 Vet.App. at 333 (noting that Rule 3(c) of this Court's Rules only requires an NOA to contain the appellant's name, address, telephone

number, VA claims file number, a reasonable identification of the Board decision appealed, and an expressed intent to seek Court review of that decision).  Accordingly, we cannot hold that the veteran exercised due diligence in this case.

## E.  Attorney Discipline

Allen Vacura is not a member of the bar of this Court.  Rather, he is a member of the Alaska Bar Association.  Thus, it is the Alaska Bar Association's responsibility to determine whether any disciplinary action should be taken against Mr. Vacura.

## III.  CONCLUSION

Based on the information before the Court, the veteran has neither established that his untimely appeal was the result of extraordinary circumstances, nor demonstrated that he acted with due diligence in pursuing his appeal.  Therefore, we conclude that he has not met his burden of establishing jurisdiction in this Court.  Accordingly, this appeal is DISMISSED for lack of jurisdiction.  In addition, the appellant's motion for oral argument is denied because the Court does not believe that such argument would aid materially in the disposition of this appeal. *See Costantino v. West*, 12 Vet.App. 517, 521 (1999).