# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 15-0153(E)

Gene A. Mead, Appellant,

v.

David J. Shulkin, M.D.,
Secretary of Veterans Affairs, Appellee.

Before SCHOELEN, BARTLEY, and GREENBERG, *Judges.*

## O R D E R

Mr. Mead's appeal seeking service connection for back, cervical spine, and right shoulder disabilities was remanded by the Court on March 16, 2016. On June 6, 2016, Mr. Mead's counsel submitted an application for attorney's fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d). The issue before the Court is whether an attorney's treatment for a suspected medical condition, which began during the litigation of an appeal, warrants equitable tolling of the period for filing an application for EAJA fees that was filed 52 days late. Because counsel has not demonstrated an extraordinary circumstance, the Court finds equitable tolling of the 30-day filing period not warranted in this matter and will not accept Mr. Mead's EAJA application as timely filed.

## I.

On November 17, 2014, the Board of Veterans' Appeals issued a decision denying the appellant, veteran Gene A. Mead, benefits based on service connection for (1) a back disability; (2) a neck disability; and (3) a right shoulder disability. On January 15, 2015, Mr. Mead appealed.

During the course of the appeal, in December 2015, counsel was referred to a specialist for suspected cancer, Counsel's Nov. 19, 2016, Response at 2, Exhibit 1, and in February 2016 counsel started treatment for "acute depression," *id.* at 3-4; *see also id.,* Exhibit 8.

On March 14, 2016, counsel agreed to the terms of a joint motion for partial remand (JMPR) and requested that the Secretary file the motion that day. Secretary's Oct. 31, 2016, Response, Exhibit A. On March 16, 2016, the Court granted the JMPR, and the order served as the mandate of the Court. *See* U.S. Vet. App. R. 41(b) ("Mandate is when the Court's judgment becomes final and is effective as a matter of law pursuant to 38 U.S.C. § 7291."). Thus, counsel's EAJA application was due April 15, 2016. *See* U.S. Vet. App. R. 39(a) ("An application pursuant to 28 U.S.C. § 2412(d) . . . shall be submitted for filing with the Clerk not later than 30 days" after the Court's mandate.).

On the same day that the Court granted the JMPR, counsel underwent preoperative testing at Seven Rivers Regional Medical Center for an unidentified condition. Counsel's Nov. 19, 2016,

Response at 3, Exhibit 4. Two days later, on March 18, 2016, counsel underwent outpatient surgery for an unidentified condition. *Id.* at 3, Exhibit 5. Evidence shows that counsel was under the care of a psychiatrist during the 30-day filing period. *Id.* at 4, Exhibit 8.

Counsel admits that she mistakenly believed that she had 60 rather than 30 days to file an EAJA application. *Id.* She asserts that on June 2, 2016, she realized that the EAJA application was past due and contacted the Secretary to seek his position on a motion for a late EAJA application, and the Secretary iterated that he opposed the motion. *Id.* On June 6, 2016, the Court received Mr. Mead's opposed application for attorney's fees under EAJA, 52 days late.[1]

On July 11, 2017, this Court ordered counsel to provide certain additional information regarding the medical procedures and mental health diagnosis relevant to the period for which she sought tolling. The Court also requested that counsel seek an opinion from her medical providers as to her capability to handle her own affairs during the period to be tolled. On August 11, 2017, counsel declined to provide additional information to the Court, stating that providing her treatment records would be embarrassing and a violation of her privacy. Counsel's Aug. 11, 2017, Response at 2. She also asserted that the Court's request "sets an unfortunate precedent that calls into question the integrity of advocates practicing before this Court." *Id.* at 3.

## II.

As stated above, under EAJA, the statutory deadline requires an applicant for fees and other expenses to submit the application within 30 days after the Court's mandate has issued. *See* U.S. VET. APP. R. 39 (citing 28 U.S.C. § 2412(d)(1)(B)). However, "the 30-day deadline for [EAJA] applications and its application-content specifications are not properly [termed] 'jurisdictional.'" *Scarborough v. Principi*, 541 U.S. 401, 414 (2004). The statutory time limit, as with other statutory time limits, including that applicable to filing an appeal to the Court, has been held subject to equitable tolling. *See Bove v. Shinseki*, 25 Vet.App. 136 (2011) (per curiam order). Circumstances allowing for equitable tolling were first established in *Bailey v. West*, 160 F.3d 1360 (Fed. Cir. 1998) (en banc), and its progeny, and the precedential decisions of this Court prior to *Henderson v. Peake* 22 Vet.App. 217 (2008), *aff'd sub nom. Henderson v. Shinseki*, 589 F.3d 1201 (Fed. Cir. 2009) (en banc), *rev'd,* 131 S. Ct. 1197 (2011).

An otherwise untimely EAJA application may be subject to equitable tolling if it is established that some "extraordinary circumstance" prevented a timely filing, and that despite the circumstance the applicant pursued her rights diligently. *See Bly v. McDonald*, 28 Vet.App. 256, 261 (2016) (citing *Checo v. Shinseki*, 748 F.3d 1373, 1378-80 (Fed. Cir. 2014)). Equitable tolling "is not limited to a small and closed set of factual patterns" and is rather decided on a "case[-]by[-]case basis," *see Mapu v. Nicholson*, 397 F.3d 1375, 1380 (Fed. Cir. 2005); *see also Sneed v. Shinseki*, 737 F.3d 719, 726 (Fed. Cir. 2013).

---

[1] Counsel also filed motions for leave to file a late EAJA application on October 17, 2016, and November 19, 2016.

Of relevance here, equitable tolling may be warranted if an untimely filing was the direct result of a physical or mental illness rendering one incapable of handling one's own affairs or rational thought and decisionmaking. *See Barrett v. Principi*, 363 F.3d 1316, 1321 (Fed. Cir. 2004) (mental disability); *Arbas v. Nicholson*, 403 F.3d 1379, 1381 (Fed. Cir. 2005) (physical disability). However, a diagnosis alone does not warrant equitable tolling; rather, a claimant must demonstrate that an untimely filing was the direct result of an illness. *See Bove*, 25 Vet.App. at 144. This is a high standard of proof. *See Claiborne v. Nicholson*, 19 Vet.App. 181, 187 (2005).

Without more information, counsel has not carried her burden of demonstrating that her physical or mental health singly or in combination *directly or indirectly* prevented her from timely filing her EAJA application within the 30-day period. *See Chastain v. West*, 13 Vet.App. 296, 300-01 (2000) (burden is on the appellant to establish applicability of equitable tolling), *aff'd*, 6 F. App'x 854 (Fed. Cir. 2001). The Court does not doubt that dealing with illness made the circumstances surrounding counsel's representation of her client more difficult. However, her explanation and the information she has provided are insufficient to establish that she was rendered incapable of handling her own affairs or otherwise meets the extraordinary-circumstance standard for equitable tolling, for the 30-day period from March 16, 2016, to April 15, 2016. *See Barrett*, 363 F.3d at 1321 (noting "vague assertions of mental problems will not suffice" to obtain the benefit of equitable tolling).

In *Arbas*, the U.S. Court of Appeals for the Federal Circuit held that this Court must focus on "whether the particular infirmity of the veteran prevented him from engaging in 'rational thought or deliberate decision making' or rendered him 'incapable of handling [his] own affairs or unable to function [in] society" for the period at issue. 403 F.3d at 1381. Here, counsel provided evidence that she had outpatient surgery on March 18, 2 days into the 30-day filing period. Also, during this time she was on medication for depression. But her allegations about her illnesses are not specific enough to demonstrate that her failure to timely file an EAJA application within the 30-day period between March 16, 2016, and April 15, 2016, was a direct result of her physical or mental health problems or that they rendered her incapable of handling her own affairs. Additionally, counsel does not allege that these problems rendered her incapable of rational thought or decisionmaking, and she declined to provide opinions from her medical care providers as to her abilities during the 30-day EAJA filing period.

Significantly, counsel filed her EAJA application 52 days late. The Court notes that the counsel mistakenly thought she had 60 days rather than 30 days to file the application. Counsel's Oct. 17, 2016, Response at 5. This amounts to the type of garden variety neglect not contemplated by equitable tolling. *See Bailey*, 160 F.3d at 1365 (equitable tolling not extended to "a garden variety claim of excusable neglect"); *see also Nelson v. Nicholson*, 19 Vet.App. 548, 553 (2006) (refusing to extend equitable tolling to cases involving attorney neglect such as missing a filing deadline); *aff'd,* 489 F.3d 1380 (Fed. Cir. 2007). Moreover, even if counsel was correct in her belief that she had 60 days to file the EAJA application, the deadline would have been May 15, 2016. Counsel did not file her application until June 6, 2016 – 22 days later.

As to counsel's hesitation to provide further information because of privacy concerns, the Court did not ask counsel to provide complete treatment records. The order requested information regarding her diagnoses during the relevant period and, if possible, opinions from her treating doctors about her ability to handle her affairs during that period. If counsel was concerned about any personal health information she provided the Court becoming public, she was free to request that the Court lock the record. Pursuant to the Court's E-Rule 4, to protect personal privacy and other legitimate interests, certain documents in a case may be locked and available to only users of the Case Management/Electronic Case Filing System. Additionally, pursuant to the Court's Rule 48(b), the Court may use its discretion to order certain filings sealed even if the filings do not contain records that are protected by 38 U.S.C. § 7332 (confidentiality of certain medical records). *See* U.S. VET. APP. R. 48.

Moreover, the Court here has not required anything more of counsel than it requires of a veteran seeking equitable tolling of a deadline. When an appellant files an untimely Notice of Appeal, the same equitable tolling principles apply, and the Court often requests additional information to determine whether equitable tolling is warranted.[2] *See, e.g.*, *Checo*, *Bove*, and *Bailey*, all *supra*.

### III.

Because Mr. Mead's counsel has not demonstrated that an extraordinary circumstance prevented her from filing a timely EAJA application despite her exercise of due diligence, the Court finds that equitable tolling is not warranted and will not accept Mr. Mead's June 6, 2016, EAJA application as timely filed.

For the foregoing reasons, it is

ORDERED that counsel's October 17, 2016, and November 19, 2016, motions for leave to file an untimely EAJA application are denied as moot. It is further

ORDERED that counsel's June 6, 2016, EAJA application is DISMISSED as untimely.

DATED: October 27, 2017                                                    PER CURIAM.

---

[2] The dissent criticizes the majority for questioning the truthfulness of counsel's statements, arguing that lawyers hold a professional license that is contingent upon their candor before this Court. However, the Court is not questioning the veracity of counsel's statements regarding her treatment. Instead, the Court is necessarily concerned with whether her medical conditions rose to the level of an extraordinary circumstance that prevented her from timely filing an EAJA application. An opinion from counsel's medical providers as to her capability to "handle her own affairs" or "engage in rational thought and deliberate decisionmaking" during the period to be tolled would have spoken to this issue. *See Barrett*, 363 F.3d at 1321; *Arbas*, 403 F.3d at 1381.

4

GREENBERG, *Judge*, dissenting:

I respectfully dissent, as equitable tolling of the appellant's EAJA application is clearly warranted. *See* William J. Brennan, *In Defense of Dissents* 37 HASTINGS L.J. 427, 431 (1985)(the purpose of dissents is to in part "sow seeds for future harvest").

## I.

On October 17, 2016, and November 19, 2016, the appellant's counsel responded to this Court as to why her application should not be dismissed as untimely. On February 3, 2017, I circulated to the other members of this Court an order granting equitable tolling, under my authority as a single judge under 38 U.S.C. § 7254(b) (this Court "may hear cases by judges sitting alone or in panels, as determined pursuant to procedures established by the Court"). The order was circulated to all the active judges on this Court under our Internal Operating Procedures (IOP). *See* IOP II(b)(1) and X(a)-(b). On February 9, 2017, a panel was formed under IOP II(b)(2).

On July 11, 2017, the majority ordered the appellant's counsel to provide an additional response "detailing her medical and mental diagnoses, as well as any other pertinent documentary evidence" that would assist the Court in its decision. I dissented from that order, believing that counsel had presented sufficient evidence to justify equitable tolling. On August 11, 2017, the appellant's counsel responded to the Court's order, stating that "[p]roviding additional documentation of her psychiatric and gynecological diagnoses and treatment records [. . .] would be deeply embarrassing to Counsel for the Appellant and a violation of her privacy." Aug. 11, 2017, Response at 2.

## II.

I am alone in my view that counsel's plight during the litigation of the appellant's appeal amounts to an extraordinary circumstance. *See Bly v. McDonald,* 28 Vet.App. 256, 261 (2016). A potentially life-threatening illness, endometrial cancer, effectively made the circumstances surrounding counsel's representation of her client anything but ordinary. The December 29, 2015, referral by her family physician for the suspected illness was made shortly after she had filed the appellant's initial brief. The remaining relevant actions in this case all occurred during both her mental and physical battle with the suspected condition.

I would have also found that the diligence requirement has been satisfied here. Although the Secretary coldly argues that equitable tolling should be denied because "an attorney must withdraw from representation of a client when her physical or mental condition materially impairs her ability to represent the client," and in this case counsel did not withdraw, I disagree. The Secretary's support for his position evidences diligence on the part of counsel, not malpractice. Secretary's October 31, 2016, Response at 3, (citing ABA MODEL RULES OF PROF'L CONDUCT R. 1.16(a)(2) (Client-Lawyer Relationship). As the Secretary correctly acknowledges, counsel "participated in negotiating the terms of the [joint motion for partial remand, or JMPR] several days prior to the Court's order and mandate and the Secretary acknowledges seeing the relevant docket entries on March 16." Secretary's Oct. 31, 2016, Response at 3. Counsel also "participated

in negotiating the terms of the JMPR several days prior to" her surgery for suspected endometrial cancer. *See id.*; *see also* Counsel's Nov. 19, 2016, Response, Exhibit 5. Four days before counsel's surgery, the Secretary offered to agree to continue to stay the proceedings, but counsel instead reviewed the terms of the JMPR and *secured a favorable outcome for her client*. Secretary's Oct. 31, 2016, Response, Exhibit A. Counsel had completed all matters relevant to her zealous advocacy of her client, and the only remaining action at the Court was of payment for services already rendered.[3] Counsel therefore demonstrated diligence during her representation of her client, despite her extraordinary circumstances. As the appellant is a prevailing party, there is no question that counsel would have been entitled to fees had her application been accepted. *See* 28 U.S.C. § 2412(d)(1)(A). The Court should look upon the case and counsel's actions as a whole rather than parsing out or divvying up the different stages of this matter. *Comm'r, I.N.S. v. Jean,* 496 U.S. 154, 161-62 (1990) (evidencing the Supreme Court's acknowledgement that "EAJA . . . favors treating a case as an inclusive whole, rather than as atomized line items").

The majority has chosen to credit counsel's representations regarding the nature and timing of her surgery, but not credit her testimony regarding the effect that surgery had on her ability to file a timely EAJA application. Lawyers, like veterans, should have to support their requests for equitable tolling. However lawyers, unlike veterans, have a professional license that is contingent upon their candor before this court, as before any court in which that lawyer practices. *See Barela v. Peake*, 22 Vet.App. 155, 159 (2008) (attorney appearing before this Court is expected to comply with Model Rules of Professional Conduct); *see also* ABA MODEL RULES OF PROF'L CONDUCT R. 3.3 (Candor Towards the Tribunal). To require that counsel provide supporting medical opinions and documentation before we credit her testimony is to presume that she would risk her professional license to collect a $12,244.91 EAJA award. Absent any specific reason to doubt counsel's credibility, this Court should presume that when she says that her mental and physical condition made her unable to file an EAJA application less than a month after surgery, she is telling the truth.

## III.

I believe that that portion of the IOP addressing the review of single-judge opinions violates 38 U.S.C. § 7254(c)(1), which states that "[a] majority of the judges of the Court shall constitute a quorum for the transaction of the business of the Court." The statutory requirement that the business of this Court must be conducted by a "quorum" is "unambiguous, unequivocal, and unlimited." *Conroy v. Aniskoff*, 507 U.S. 511, 514 (1993). On February 9, 2017, when two of my colleagues expressed disagreement with my single-judge decision and voted the matter to panel,

---

[3] The Secretary argues that "to the extent that a fee agreement between Appellant and his counsel 'might be excessive or unreasonable when an agreed offset of EAJA fees cannot be consummated because the attorney failed to timely file an EAJA application,' both the Secretary and the Court have the authority to consider and reduce such fees." Secretary's Oct. 31, 2016, Response at 5 (quoting *Bly,* 28 Vet.App at 264). The Secretary's argument is not on point. Counsel is representing the appellant pro bono, and thus, her only means of payment in this matter is through the receipt of EAJA fees. *See* Aug. 28, 2015, Fee Agreement.

this Court had six active members.  Surely sending a matter for precedential panel disposition constituted "business of the Court" that should have required a 4 vote majority.[4]

Subjecting an individual Judge's equitable tolling discretion to panel review is inconsistent with the IOP itself.  IOP I(b)(2) states that "[t]he Court has adopted the standard enumerated in *Frankel v. Derwinski*, 1 Vet.App. 23 (1990), to decide whether matters should be decided by a panel or by a single Judge."  In *Frankel*, this Court held that the question whether a matter requires panel consideration "is a function of its precedential value," and that a matter should be disposed of by a single Judge if it is of relative simplicity and

> 1. does not establish a new rule of law; 2. does not alter, modify, criticize, or clarify an existing rule of law; 3. does not apply an established rule of law to a novel fact situation; 4. does not constitute the only recent, binding precedent on a particular point of law within the power of the Court to decide; 5. does not involve a legal issue of continuing public interest; and 6. the outcome is not reasonably debatable.

1 Vet.App. at 25-26.

Cases that involve a Judge's exercise of his equity jurisprudence clearly fall within the criteria for single-judge disposition set forth in *Frankel*.  A Court's decision to grant or withhold equitable relief is not "a matter of right in either party; but is a matter of discretion in the Court . . . which withholds or grants relief, according to the circumstances of each particular case."  JOSEPH STORY, EQUITY JURISPRUDENCE § 742 (1st ed. 1836).  A sitting Judge's decision to grant equitable relief is not guided by an application of law and precedent to a set of facts, but by his or her own values and judgment about whether in a particular case "justice and equity require that relief be allowed."  *Wilford v. Sigmund Eisner Co.*, 13 N.J. Super. 27, 33 (1951) (Brennan, J.)  Equitable remedies "are distinguished for their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use."  JOHN N. POMEROY, EQUITY JURISPRUDENCE § 109 (4th ed. 1918)).  Individual Judges at this Court may have differing judgments and values about the propriety of extending equitable relief in a particular case, and each individual application of those judgments or values is not the establishment of "a new rule of law" for which a panel would be required.  *Frankel*, 1 Vet.App. at 25-26; *see also Holland v. Florida*, 560 U.S. 631, 651 (2010) (the exercise of equity powers in tolling a statutory time limit must be made on a case-by-case basis).  To the degree that the 30-day deadline under 28 U.S.C. § 2412(d)(1)(B) is not "properly [termed] 'jurisdictional,'" *Scarborough v. Principi*, 54 U.S. 401,

---

[4] The IOP's process for overruling a statutorily authorized single-judge decision with only two votes by other members of the Court, uninitiated by any party to the case, is unique in our Federal courts system.  By analogy, the procedure for sua sponte en banc review of a federal circuit court panel decision requires a vote by "[a] majority of the circuit judges who are in regular active service."  FED. R. APP. P. 35(a).  Rule 35(a) also warns that en banc review is disfavored and "will not be ordered unless: (1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involved a question of exceptional importance."  *Id.*  I see no reason why this Court should not adopt a similar procedure for sua sponte review of our own decisions, to the extent that our scope of review "is similar to that of an Article III court reviewing agency action under the Administrative Procedure Act, 5 U.S.C. § 706."  *Henderson v. Shinseki*, 562 U.S. 428, 432, n.2 (2011)

414 (2004), there is no reason to involve the IOP's ordinary panel process when a single Judge decides, based on equitable principles, to abstain from enforcing that time limit.

To the extent that Congress envisioned that litigants before this Court have the option of a single-judge determination, it is unclear how a single Judge's exercise of his equitable jurisdiction should be subject to panel review. *See* 38 U.S.C. § 7254. Any disagreement with my exercise of my own equity discretion in February 2017, when I originally granted tolling of the appellant's EAJA application, should have been pursued by one of the parties through an appeal or motion for reconsideration, or at the very least should have been disturbed only by a "majority of the judges of this Court." 38 U.S.C. § 725(c)(1). A process that allows for a single Judge's veteran-friendly decision to be overturned merely because two other Judges disagreed goes against the intent of Congress in creating our Court, which was to "place a thumb on the scale in the veteran's favor in the course of administrative and judicial review of VA decisions." *Henderson*, 562 U.S. at 440. I do not believe that in establishing our Court, Congress intended such limitless dilution of a single Judge's statutory authority. It is for these reasons that I dissent.